# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| MCHENRY COUNTY and KANKAKEE COUNTY, bodies politic and corporate, | |
| Plaintiffs, | Case No. 21-cv-50342 |
| v. | Judge Phillip G. Reinhard |
| KWAME RAOUL, in his official capacity as Illinois Attorney General, | Magistrate Judge Lisa A. Jensen |
| Defendant. | |

## MEMORANDUM OF LAW OF AMICUS CURIAE IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF PLAINTIFFS' <u>MOTION FOR A PRELIMINARY INJUNCTION</u>

Gina M. D'Andrea
Immigration Reform Law Institute
25 Massachusetts Ave NW, Suite 335
Washington, DC 20001
T: 202.232.5590
F: 202.464.3590
gdandrea@irli.org

*Attorney for amicus curiae*
*Immigration Reform Law Institute*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTEREST OF AMICUS CURIAE ........................................................................................1

INTRODUCTION ....................................................................................................................1

ARGUMENT ............................................................................................................................2

   I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ...............................2

      A.   The Illinois Way Forward Act is Preempted by Federal Law ...................................2

CONCLUSION .........................................................................................................................6

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992).................................................2

*Am. Agric. Movement v. Bd. of Trade*, 977 F.2d 1147 (7th Cir. 1992) ...........................................4

*Arizona v. United States*, 567 U.S. 387 (2012) ................................................................2, 3, 4

*Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028 (7th Cir. 2008) ...........................................3

*Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002) ...............................................................3

*C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020).......................................................5

*City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999) ...................................................4

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)...........................................................4

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992)........................................................3

*Indiana Bell Tel. Co., Inc. v. Indiana Util. Regulatory Com'n*, 359 F.3d 493 (7th Cir. 2004) .......5

*Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490 (7th Cir. 2018)....................................5

*Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041 (7th Cir. 2013) ...............................................5

*Rice v. Santa Fe Elevator Corp*, 331 U.S. 218 (1947) ...................................................................3

*Sanchez-Soriano v. United States*, No. 09-cv-500-JPG-PMF, 2011 U.S. Dist. LEXIS 146977, (S.D. Ill. 2011) ...............................................................................................................................5

*Savage v. Jones*, 225 U.S. 501 (1912).........................................................................................4

*Time Warner Cable v. Doyle*, 66 F.3d 867 (7th Cir. 1995)..............................................................3

*Ty, Inc. v. Jones Grp. Inc.*, 237 F.3d 891 (7th Cir. 2001) .............................................................2

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).................................................................2

**Statutes**

5 ILCS 805/15(g)(1) ........................................................................................................1

5 ILCS 805/30(b) ...........................................................................................................1

8 U.S.C. § 1103(a)(11)(B) ...........................................................................................2, 6

8 U.S.C. § 1226 .............................................................................................................5

8 U.S.C. § 1231(a)(2) ....................................................................................................5

8 U.S.C. § 1231(g)(1) ....................................................................................................5

8 U.S.C. § 1231(g)(2) ....................................................................................................6

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ................................................................................................3

## INTEREST OF AMICUS CURIAE

The Immigration Reform Law Institute ("IRLI") is a not for profit 501(c)(3) public interest law firm incorporated in the District of Columbia. IRLI is dedicated achieving responsible immigration policies that serve the best interest of the nation. IRLI has litigated or filed *amicus curiae* briefs in many immigration-related cases before federal courts (including this Court) and administrative bodies. For more than twenty years, the Board of Immigration Appeals has solicited *amicus* briefs drafted by IRLI staff from IRLI's parent organization, the Federation for American Immigration Reform, because the Board considers IRLI an expert in immigration law.

## INTRODUCTION

The Illinois Way Forward Act ("IWFA") was enacted by Governor Pritzker in direct contravention of congressional objectives regarding alien detention established in the Immigration and Nationality Act ("INA"). Because it prohibits new cooperation and mandates termination of existing cooperation, the IWFA amounts to an intentional and direct obstacle to the established process and explicit goals of congress with respect to alien detention. The IWFA provides:

> (1) No law enforcement agency, law enforcement official, or any unit of state or local government may enter into or renew any contract, intergovernmental service agreement, or any other agreement to house or detain individuals for federal civil immigration violations.
> (2) Any law enforcement agency, law enforcement official, or unit of state or local government with an existing contract, intergovernmental agreement, or other agreement, whether in whole or in part that is utilized to house or detain individuals for civil immigration violations shall exercise the termination provision in the agreement as applied to housing or detaining individuals for civil immigration violations no later than January 1, 2022.

5 ILCS 805/15(g)(1), (2). The IWFA further provides the Illinois Attorney General with the authority to "maintain an action for declaratory, injunctive or any other equitable relief" against any party found to be in violation of these commands. 5 ILCS 805/30(b).

1

Thus, Illinois has enacted a prohibition that compels state and local officials, many of whom would otherwise cooperate with federal law enforcement aims, not to offer such cooperation. This prohibition has disastrous consequences for important congressional interests in the detention of removable aliens and thus should be enjoined by this Court. By mandating the termination of existing agreements and prohibiting the use of future contracts, Illinois has intentionally created an obstacle to the enforcement of federal immigration law.

## **ARGUMENT**

As the Supreme Court has explained, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The reviewing court follows "the sliding scale approach; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Ty, Inc. v. Jones Grp. Inc.*, 237 F.3d 891, 895–96 (7th Cir. 2001) (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). Because Plaintiffs' likelihood of success on the merits is high the Court should grant their motion for preliminary injunction.

**I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**
   **A. The Illinois Way Forward Act is Preempted by Federal Law**

The federal government's "broad, undoubted power over the subject of immigration" is well-established. *Arizona v. United States*, 567 U.S. 387, 394 (2012). The Immigration and Nationality Act ("INA") reflects Congress's intention that state and local officials cooperate with federal officials to regulate immigration. In fact, Congress explicitly expressed that cooperation between such entities was necessary with respect to alien detention. 8 U.S.C. § 1103(a)(11)(B) (authorizing the Attorney General to work with state and local governments to establish alien

2

detention centers). Because the IWFA prohibits such cooperation and requires termination of any existing cooperative agreements, it is conflict preempted and should be struck down by this court.

The Supremacy Clause ensures that where a conflict arises between state and federal law, federal law triumphs. U.S. Const. art. VI, cl. 2 ("the Laws of the United States . . . shall be the supreme Law of the Land . . . Laws of any State to the Contrary notwithstanding."). Congress can override state and local laws because "[t]he Supremacy Clause provides a clear rule . . . Congress has the power to preempt state law." *Arizona*, 567 at 399. *See also Time Warner Cable v. Doyle*, 66 F.3d 867, 874 (7th Cir. 1995) ("Pursuant to this authority, the Congress, in the exercise of the legislative authority granted to it by the Constitution, may preempt state law."). Thus, federal law will preempt state law where "the clear and manifest purpose of Congress" is that federal law be supreme. *Rice v. Santa Fe Elevator Corp*, 331 U.S. 218, 230 (1947).

Preemption can be express or implied. *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal citation and quotation marks omitted) ("Pre-emption may be either express or implied, and is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose."). *See also Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) ("Preemption can take on three different forms: express preemption, field preemption, and conflict preemption."); *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) ("A federal law may preempt a state law expressly, impliedly through the doctrine of conflict preemption, or through the doctrine of field (also known as complete) preemption."). An implied conflict may arise where "compliance with both federal and state regulations is a physical impossibility" or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 300. "If the purpose of the act cannot be otherwise accomplished—if its

operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power." *Savage v. Jones*, 225 U.S. 501, 533 (1912). Determination of an unconstitutional impediment to federal law is "informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 374 n.8 (2000); *see also Gade*, 505 U.S. at 98 ("Our ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole.").

### i. The Illinois Way Forward Act is Obstacle Preempted

The doctrine of obstacle preemption ensures that states may not invoke their authority as a sovereign to legislate in a way that undermines congressional goals. Cooperation between state and federal officials is essential to our system of dual sovereignty. As the Second Circuit has explained, "[t]he potential for deadlock thus inheres in dual sovereignties, but the Constitution has resolved that problem with the Supremacy Clause, which bars states from taking actions that frustrate federal laws and regulatory schemes." *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (internal citations omitted). Thus, a state law will be obstacle preempted where it blocks "the accomplishment and execution of the full purposes and objectives of Congress as manifested in the language, structure, and underlying goals of the federal statute at issue." *Am. Agric. Movement v. Bd. of Trade*, 977 F.2d 1147, 1154 (7th Cir. 1992) (internal citation and quotation marks omitted).

Determining "[w]hat is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]" *Crosby*, 530 U.S. at 373. *See also Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490, 515 (7th Cir. 2018) (internal citations omitted) (explaining that the analysis considers "the text and

structure of the law" and "does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives."). To succeed in an obstacle preemption claim, "[t]he challenger must show that applying the state law would do major damage to clear and substantial federal interests." *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020) (internal citation and quotation marks omitted). Furthermore, the Seventh Circuit has explained that under obstacle preemption, "[a] state law is . . . pre-empted if it interferes with the methods by which the federal statute was designed to reach the goal." *Indiana Bell Tel. Co., Inc. v. Indiana Util. Regulatory Com'n*, 359 F.3d 493, 497 (7th Cir. 2004). Thus, "conflict preemption applies not only to conflicts between federal and state substantive rules, but also to state rules that interfere with processes established by federal acts." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1051 (7th Cir. 2013).

Congress provided the Attorney General with the authority to arrest and detain aliens pending removal and required the detention of criminal aliens. *See, e.g.,* 8 U.S.C. § 1226; 8 U.S.C. § 1231(a)(2). The INA instructs the Attorney General to "arrange for appropriate places of detention for aliens." 8 U.S.C. § 1231(g)(1). *See also Sanchez-Soriano v. United States*, No. 09-cv-500-JPG-PMF, 2011 U.S. Dist. LEXIS 146977, at *5–6 (S.D. Ill. 2011) (internal citations omitted) ("Federal law mandates a period of detention for aliens during the removal period. The Attorney General has a statutory duty to arrange for appropriate places of detention."). The statutory language clearly establishes that, in the absence of suitable federal detention centers, the Attorney General the power to go outside the federal infrastructure and "expend . . . amounts necessary to acquire, build, repair and operate facilities . . . necessary for detention[.]" 8 U.S.C. § 1231(g)(1). Congress's goal of cooperation is also reflected in the INA's preference for the use of existing facilities over construction of new detention centers. 8 U.S.C. § 1231(g)(2) (instructing

immigration officials to "consider the availability for purchase or lease of any existing prison, jail detention center or other comparable facility."). This purpose is achieved by the authorization "to enter into a cooperative agreement . . . to establish acceptable conditions of confinement and detention services in any State or unit of local government which agrees to provide guaranteed bed space" for detained aliens. 8 U.S.C. § 1103(a)(11)(B). The inclusion of these provisions in the INA makes clear that Congress's objective was for federal and state officials to work together to find suitable housing for detainable aliens.

The IWFA clearly obstructs these congressional goals by prohibiting actors such as Plaintiffs from voluntarily cooperating with the established process for detention of detainable aliens. The IWFA's intent is clearly at odds with congressional purposes and creates an obstacle by prohibiting and terminating such voluntary cooperation—an intent that clearly and explicitly conflicts with the federal government's mission to enforce the nation's immigration laws. Without question, the IWFA does "major damage to clear and substantial federal interests" by effectively eliminating the federal government's ability to house detainable aliens in the state of Illinois. Finally, by prohibiting detention contracts, Illinois has created a direct and purposeful obstacle to the process established by the Attorney General for the achievement of congressional alien detention goals.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for preliminary injunction.

Dated: October 12, 2021  　　　　　　　　　　/s/ Gina M. D'Andrea_____
　　　　　　　　　　　　　　　　　　　　Gina M. D'Andrea

　　　　　　　　　　　　　　　　　　　　Gina M. D'Andrea
　　　　　　　　　　　　　　　　　　　　Immigration Reform Law Institute
　　　　　　　　　　　　　　　　　　　　25 Massachusetts Ave NW, Suite 335

Washington, DC 20001
T: (202) 232-5590
F: (202) 464-3590
gdandrea@irli.org

*Attorney for amicus curiae*
 *Immigration Reform Law Institute*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a copy of the foregoing Memorandum of Law of *Amicus Curiae* Immigration Reform Law Institute in Support of Plaintiffs' Motion for a Preliminary Injunction was served on the parties via CM/ECF.


              /s/ Gina M. D'Andrea