IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MCHENRY COUNTY and KANKAKEE COUNTY, | |
| Plaintiffs, | No. 21-cv-50341 |
| v. | Judge Philip G. Reinhard |
| KWAME RAOUL, in his official capacity as Illinois Attorney General, | Magistrate Judge Lisa A. Jensen |
| Defendant. | |

**THE ATTORNEY GENERAL'S MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

    A.    The Trust Act and Way Forward Act ................................................................... 2

    B.    The Counties' agreements to hold federal detainees ............................................. 2

    C.    The Counties' requests for relief............................................................................ 3

LEGAL STANDARD........................................................................................................................ 4

ARGUMENT .................................................................................................................................... 4

I.    The complaint fails to state an intergovernmental immunity claim. ................................ 5

    A.    Subunits of the State cannot assert federal intergovernmental immunity against the State.................................................................................................................... 5

    B.    No court has given federal intergovernmental immunity to a subunit of a state. ... 6

    C.    Intergovernmental immunity also does not apply because the Act does not regulate or discriminate against the federal government. ........................................ 7

II.    The Illinois Way Forward Act is not preempted by federal law......................................... 9

    A.    The Tenth Amendment and the anti-commandeering doctrine preserve the State's right to choose whether to assist in enforcing federal law. .......................... 9

    B.    The federal government expressly recognizes that the Counties' assistance is subject to state law. ............................................................................................... 11

    C.    The Act is not implicitly preempted. ................................................................... 12

        1.    Federal law does not demonstrate an intent to prevent States from legislating whether they will house civil immigrant detainees. ................ 13

        2.    The Act cannot obstruct housing at state facilities when federal law does not and cannot require it. .................................................................. 14

CONCLUSION................................................................................................................................ 15

**INTRODUCTION**

Plaintiffs, McHenry County and Kankakee County (the "Counties"), are two subunits of the State of Illinois (the "State") that bring this action to enjoin and nullify a new state statute, the Illinois Way Forward Act. The Counties make millions of dollars from detaining immigrants for the federal government, and project their revenue will decrease when they comply with the Act. To avoid the law, the Counties bring two claims, both of which rely on a fundamental misunderstanding about the relationship between counties, states, and the federal government.

Counties are creations of the State. The State decides how its counties are created, drawn, and governed. Counties derive their authority from, and are regulated by, state law. The complaint errs by ignoring counties' subordinate status and mischaracterizing the Counties as federal contractors. Count I fails to state a claim because the Counties, as subunits of the State, cannot rely on federal intergovernmental immunity to avoid compliance with the law of their creating State.

The Counties' other claim—preemption—also mistakes how federalism works. The State is a separate sovereign from the federal government. The State can choose to assist—or not assist— the federal government's immigration enforcement efforts. The State's right to choose how to use its own law enforcement resources—including the right not to be commandeered into enforcing federal law—is a fundamental attribute of the State's sovereignty. *See Printz v. United States*, 521 U.S. 898 (1997). The Counties' contention that federal immigration law *requires* state and local governments to house detainees for the federal government ignores the anti-commandeering principle embodied in the Tenth Amendment.

The Counties may begrudge the choice the State has made—and their anticipated loss of detention-related revenue—but they have failed to state a claim upon which relief can be granted by this Court. Their complaint should be dismissed with prejudice.

1

## BACKGROUND

### A. The TRUST Act and Way Forward Act

In 2017, the Illinois General Assembly passed the TRUST Act to bolster cooperation between Illinois law enforcement and immigrant communities. 5 ILCS 805/1 *et seq*. The law confirmed that State and local law enforcement do not have the authority to enforce federal civil immigration laws, and thus sought to encourage residents who witness or fall victim to a crime to work with and "trust" law enforcement. In 2021, the General Assembly amended the TRUST Act by passing the Illinois Way Forward Act ("Act"). Pub. Act 102-234 (S.B. 667).

Relevant here, the Act prohibits State units and officials from entering into or continuing under any agreement to detain individuals for federal civil immigration violations. 5 ILCS 805/15(g). It contains no exemptions for any type of facility or operator of the detention facility. *Id.* For existing agreements, the Act requires the State and local governments to "exercise the termination provision in the agreement as applied to housing or detaining individuals for civil immigration violations no later than January 1, 2022." *Id.* 15(g)(2). The Act does not prohibit agreements to house federal criminal detainees. *See id.*[1] The Act also clarifies that the Illinois Attorney General has the authority to ensure compliance with its provisions. *Id.* 30.

### B. The Counties' agreements to hold federal detainees

In 2014, McHenry County entered into its current intergovernmental agreement to house federal criminal detainees and individuals detained for federal civil immigration violations. Compl.

---

[1] The Counties allege that the Act requires "the Plaintiffs to terminate their agreements with the [U.S. Marshals Service]." ECF 7 ("Compl.") ¶ 28. To the extent that this is a legal conclusion, the Court is not required to accept it. The Marshals Service holds immigrants who have been charged with a crime, the federal Bureau of Prisons holds prisoners who have been criminally convicted, and Immigration and Customs Enforcement holds individuals on civil immigration charges. The Act does not prevent the Counties from holding detainees for the Marshals Service and Bureau of Prisons.

¶ 11; ECF 7-1, Ex. A. The McHenry County agreement is for an indefinite period of time and was entered into by the McHenry County Board to authorize federal detention by the McHenry County Sheriff's Office.

In 2019, Kankakee County entered into its current intergovernmental agreement to house federal criminal detainees and individuals detained for federal civil immigration violations. *Id.* at Ex. B. Kankakee County's agreement is for a period of 48 months and was entered into by the Kankakee County Board to authorize federal detention at the Kankakee County Detention Center.

Both agreements are with the U.S. Marshal Service ("USMS"), but authorize the U.S. Immigration and Customs Enforcement ("ICE") also to use the agreement. *Id.* at 1, 17. The Kankakee agreement also authorizes the federal Bureau of Prisons ("BOP") to use the agreement. Both agreements cite section 119 of the Department of Justice Appropriations Act of 2001 (Public Law 106-553) as authorizing USMS to enter into the contracts, *id*. at 3, 19; neither agreement cites statutory authority for the Counties to enter into the contracts.

Both agreements may be terminated by either party for any reason with 30 days' notice. *Id.* at 3-4; 19. The agreements also require that the Counties "accept and provide for" the custody of all detainees "in accordance with all state and local laws." *Id.* at 3, 19. The Act does not affect detention contracts for (pretrial or post-trial) criminal detainees, and therefore only the ICE "riders" to the agreements are at issue here.

     C.     **The Counties' requests for relief**

Three months after the Act went into effect, the Counties filed this action because they believe that complying with the Act will have a "detrimental financial impact" on them. Compl. ¶¶ 13, 15. To maximize their revenue, the Counties ask this Court to enjoin the parts of the Act regarding intergovernmental agreements—subsections 15(g)(1) and (g)(2)—and the Attorney

3

General's statutory authority to bring actions for violations of the Act—subsection 30(b). Compl.¶¶ 25, 29.[2]

## LEGAL STANDARD

The State seeks dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although courts must accept as true well-pleaded factual allegations, they "do not credit legal conclusions" or mere conclusory statements. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018). The complaint must state a cognizable legal theory and sufficient facts so that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

The complaint's legal theories are not cognizable because they disregard the different legal authority possessed by the Counties, the State, and the federal government. In Count I, the Counties fail to state a claim for intergovernmental immunity against the State because they ignore their subordinate status as subunits of the State. In Count II, the Counties fail to state a claim of preemption because they ignore that federal law predicates state and local participation in federal immigration enforcement on consent from the state.

---

[2] Section 30 of the Act provides the Illinois Attorney General with authority to ensure compliance with the TRUST Act as a whole. The Counties make allegations regarding only section 15(g), and not other provisions the Attorney General is charged with enforcing. The State has filed separately a motion to strike any request for relief that seeks to enjoin section 30(b) because the Counties have failed to articulate any basis to find that the Attorney General's authority to prosecute other violations is barred by federal law.

I. **The complaint fails to state an intergovernmental immunity claim.**

   A. **Subunits of the State cannot assert federal intergovernmental immunity against the State.**

The Counties' claim of federal intergovernmental immunity violates the basic structure of federalism because it attempts to use federal law to place subunits of the State beyond the reach of the State's law.

The Counties are subordinate units of the State. Illinois counties derive their existence and their limited powers from the Illinois General Assembly. Ill. Const. art. VII, §§ 1, 2; 55 ILCS 5/5-1005 (listing the powers of counties); *Moy v. County of Cook*, 244 Ill. App. 3d 1034, 1038 (1993) (citation omitted) (counties are "at most but local organizations"). County officials such as sheriffs also derive their authority from state law. *See, e.g.*, 55 ILCS 5/3-6019 (listing the duties of a sheriff); 55 ILCS 5/5-1087 (prohibiting changes to the duties of county officers). As subordinate units of the State, counties and their officials can exercise only those powers expressly granted to them by the State's Constitution, legislature, or those that are necessarily implied from statute. *See Moy*, 244 Ill. App. at 1038-39; *Remond v. Novak*, 86 Ill. 2d 374, 382 (1981). Counties "never were and never have been considered as sovereign entities" in our federalist system. *Reynolds v. Sims*, 377 U.S. 533, 575 (1964).

The Illinois General Assembly gave the Counties permission to enter into contracts. 55 ILCS 5/5-1005(3). That power can only be exercised in a "manner not prohibited by law or by ordinance." Ill. Const. art. VII, § 10; *see also* 5 ILCS 220/5 (authorizing only those intergovernmental contracts "authorized by law"). By the Counties' logic, they received contract-making authority from the State and then expanded it beyond the reach of state law when they entered into agreements with the federal government. That cannot be true. The State maintains its own sovereign authority to regulate its political subunits. *See Lisle v. Woodridge*, 192 Ill. App. 3d

5

568, 577 (2d Dist. 1989) (explaining that municipalities do not possess authority to "perform functions not otherwise authorized by the Constitution or statute").

Because the Counties do not have more authority than the state that created them and gave them authority to contract in the first instance, they cannot assert federal intergovernmental immunity against their creating State.

> **B. No court has given federal intergovernmental immunity to a subunit of a state.**

The Court need look no further than state law to conclude that the Counties have not stated a claim of immunity. But even if the Court were to look to federal case law, there is no precedent for applying federal intergovernmental immunity to shield a State's subunit from the State itself.

Since the Supreme Court's 1819 decision in *McCulloch v. Maryland*, federal courts have found that the federal government is entitled to immunity against state or local laws that regulate it. *See, e.g.*, *Public Utilities Comm'n v. United States*, 355 U.S. 534, 544-46 (1958) (invalidating a state law that required the federal government's shipping rates to be approved by a state commission). In some instances, federal contractors also have been allowed to invoke this immunity. To enjoy the benefits of federal intergovernmental immunity, a federal contractor must serve as an instrumentality "so closely connected to the [federal] Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being [regulated] is concerned." *United States v. New Mexico*, 455 U.S. 720, 735 (1982).

Here, the Counties are not a part of the federal government but instead are a part of the State. The State regulates its subunits, including the Counties, through state law. The Counties cannot be treated as extensions of the federal government, as the intergovernmental immunity claim requires, because to do so would prohibit the State from regulating its own subunit. The Supreme Court has disfavored state subdivisions' attempts to bring federal constitutional claims

6

against their states. *See, e.g.*, *Coleman v. Miller*, 307 U.S. 433, 441 (1939); *R.R. Comm'n v. L.A. Ry. Corp.*, 280 U.S. 145, 156 (1929); *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178 (1907); *Newark v. New Jersey*, 262 U.S. 192, 196 (1923); *City of Trenton v. New Jersey*, 262 U.S. 182, 185-86 (1923). The Counties have pointed to no case allowing a state subunit to assert intergovernmental immunity on behalf of the federal government in any circumstance. Nor have they pointed to any case taking the even greater step of allowing the assertion of this immunity by a subunit of a state against its creating state. The Counties' invocation of federal intergovernmental immunity has no basis in precedent and should be rejected as an inversion of the relationship between federal, state, and local authority.

  **C.**  **Intergovernmental immunity also does not apply because the Act does not regulate or discriminate against the federal government.**

  Not only are the Counties improper plaintiffs to assert federal intergovernmental immunity, but any intergovernmental immunity claim here would also fail because the Act does not regulate or discriminate against the federal government.

  Under the doctrine of intergovernmental immunity, a state law runs afoul of the Supremacy Clause "only if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990). To determine what is regulated and burdened in an intergovernmental immunity analysis, courts look to the wording of the statute.

  The Act directs the conduct of four state or local entities: (1) law enforcement agencies; (2) law enforcement officials; (3) units of State government; and (4) units of local government. 5 ILCS 805/15(g)(1), (2). By its plain terms, the Act does not regulate the federal government. *See North Dakota*, 495 U.S. at 436-37 (finding no intergovernmental immunity claim because the regulation operated against suppliers, rather than the federal government); *United States v.*

7

*California*, 921 F.3d 865, 881 (9th Cir. 2019) (finding the state law did not violate intergovernmental immunity because it regulated only employers' conduct), *cert. denied*, 141 S. Ct. 124 (2020).

The Act also does not discriminate against the federal government because it does not "treat[] someone else better than it treats" the federal government. *Washington v. United States*, 460 U.S. 536, 544-45 (1983). It does not, for example, prohibit counties from holding detainees for the federal government while allowing counties to hold detainees for the State. Nor does it create a blanket prohibition on counties contracting with the federal government—the Act allows counties to continue to receive revenue by holding criminal detainees for the federal government. *See Washington*, 460 U.S. at 543 (finding that state tax applied an equal burden on federal workers and others); *James v. Dravo Contr. Co.*, 302 U.S. 134, 149 (1937) (finding a tax nondiscriminatory because it was not upon a government instrumentality but rather on the gross receipts earned under a contract with the federal government). The Act also does not prohibit ICE from operating its own detention facilities in Illinois while permitting others to do so. ICE remains free to work with its federal counterparts to construct and operate federal detention facilities staffed by federal officials. *See North Dakota*, 495 U.S. at 435 (noting that the tax was nondiscriminatory because the federal government continued to have suppliers from which it could buy alcohol for federal enclaves); *Penn Dairies, Inc. v. Milk Control Comm'n*, 318 U.S. 261, 269-71 (1943) (rejecting claim of immunity from state law setting minimum prices because the law exercised control over only dairy sellers, not the federal government).

Finally, the Act does not discriminate against the federal government for an even more basic reason: It is not "discrimination" when a State exercises its constitutional right not to participate in federal programs. The constitutional principle of state sovereignty "categorically"

8

prohibits the federal government from conscripting states into federal programs. *See Printz*, 521 U.S. at 933. A finding that section 15(g) "violates the doctrine of intergovernmental immunity would imply that [Illinois] *cannot* . . . refus[e] to assist [immigration] enforcement efforts—a result that would be inconsistent with the Tenth Amendment and the anticommandeering rule." *California*, 921 F.3d at 891.

In sum, even if the Counties' factual allegations were true, the complaint does not state a plausible claim of intergovernmental immunity. The Counties are not the proper parties to assert federal intergovernmental immunity against the State, and the doctrine is substantively inapplicable because the Act does not regulate the federal government or treat it differently. Accordingly, Count I should be dismissed with prejudice.

**II.     The Illinois Way Forward Act is not preempted by federal law.**

The party seeking to set aside state law bears the burden to show preemption. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011). The Counties cannot meet their burden here because federal law lets the State decide if its counties may assist with federal civil immigration enforcement.

**A.     The Tenth Amendment and the anti-commandeering doctrine preserve the State's right to choose whether to assist in enforcing federal law.**

The Constitution establishes a system of two sovereigns: the federal government and the states. *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). Any sovereign power not enumerated to Congress was reserved for the states through the Tenth Amendment. U.S. Const. amend. X. This anti-commandeering prohibition inherent in the Tenth Amendment prevents the federal government from compelling states to enforce federal law or participate in federal programs. *See New York v. United States*, 505 U.S. 144, 188 (1992); *Murphy v. NCAA*, 138 S. Ct. 1461, 1475-76 (2018).

9

Court have consistently recognized that the constitution prevents the federal government from "conscripting" state and local law enforcement to help with federal programs. *Printz*, 521 U.S. at 933; *see New York*, 505 U.S. at 175-77. A state's ability to control its subdivisions and officers is fundamental to dual sovereignty. *Printz*, 521 U.S. at 928 (noting incompatibility with states' sovereignty for their officers to be "dragooned" into administering federal law); *City of Chi. v. Sessions*, 321 F. Supp. 3d 855, 869 (N.D. Ill. 2018) (noting that a "state's ability to control its officers and employees lies at the heart of state sovereignty"), *aff'd on other grounds sub nom. City of Chi. v. Barr*, 961 F.3d 882 (7th Cir. 2020).

Refusing to aid the federal government does not constitute interference with federal programs. *California*, 921 F.3d at 890 (explaining that "the choice of a state to refrain from participation" in a federal program does not unconstitutionally impede that program). Simply put, state and local law enforcement resources cannot be conscripted for federal immigration efforts. *See, e.g.*, *City of Chicago v. Barr*, 961 F.3d 882, 892 (7th Cir. 2020) (noting that the "federal government cannot merely conscript the police forces of the state or local governments to achieve" the federal government's interest in enforcing its immigration laws).

The Counties' preemption claim completely ignores the State's recognized right to decide whether to assist the federal government. Preemption, which derives from the Supremacy Clause of the Constitution, only invalidates state laws that "interfere with, or are contrary to, federal law." *Hillsborough Cty. v. Automated Med. Labs.*, 471 U.S. 707, 712 (1985) (cleaned up); *see* U.S. Const. art. VI, cl. 2. When a state retains the right to refrain from participation in a federal scheme, preemption does not invalidate the state's lawful decision to do just that—refrain from participation. *California*, 921 F.3d at 890 (citing *Murphy*, 138 S. Ct. at 1478).

Here, the Act is not contrary to federal law because the Tenth Amendment allows states to choose whether to assist the federal government. In the Act, the State has decided for itself, its subunits, and its agents, that it will not assist in housing civil immigrant detainees. If the Court were to accept the Counties' preemption argument that the State is not free to make this choice, then the effect would be to find that not only did Congress *permit* the U.S. Attorney General to enter cooperative agreements with states and their subunits for housing detainees, but also that Congress *conscripted* states and their subunits to house detainees for the federal government. That finding would nullify states' constitutional prerogative to not be commandeered by the federal government.

### B. The federal government expressly recognizes that the Counties' assistance is subject to state law.

To respect anti-commandeering principles, when the federal government invites states and localities to participate in immigration enforcement, it requires that participation be consistent with state law. *See, e.g.*, 8 U.S.C. § 1252c(a) (granting authority to state and local law enforcement to make civil arrests of a convicted felon who illegally reenters the United States "to the extent permitted by relevant State and local law"); 8 U.S.C. § 1357(g)(1) (permitting agreements authorizing non-federal officials to perform immigration enforcement functions only "to the extent consistent with State and local law"). There is no express preemption in federal law of state laws regarding when state and local law enforcement may assist in federal immigration programs.[3] Rather, the ability of states, their subdivisions, and their officials to participate in immigrant enforcement, including detainee housing, is controlled by the State. *See, e.g.*, 8 U.S.C. § 1103(a)(11)(B) (authorizing the Attorney General to enter into cooperative agreements for

---

[3] In their pleading and in their motion for a preliminary injunction, the Counties do not appear to argue that express preemption applies. Nonetheless, an independent review of all of the federal statutes cited by the Counties confirms that none expressly preempts the Act.

11

construction, renovations, equipment, and materials needed for detention services in any state "which agrees to provide" bed space for persons detained by ICE).

It is unsurprising, then, that the agreements at issue explicitly recognize that the Counties' performance will be constrained by state law. In both contracts attached to the Complaint, the Counties agree to "provide for the secure custody, safekeeping, housing, subsistence and care of Federal detainees *in accordance with all state and local laws*, standards, regulations, policies and court orders applicable to the operation of the Facility." ECF 7-1, at 3, 19 (emphasis added). If the federal government wished to enter into a contract that would not be subject to state law, then it would not include a provision requiring the other party to comply with state law. Put differently, if the federal government had "preempted" State law relating to the agreements, then it would not have included a term in the contracts making the agreements subject to State law. The Counties cannot enter into agreements that, by their own terms, are limited by State law, and then weaponize those agreements to invalidate a State law.

In sum, the federal government conditions counties' participation in housing immigrant detainees on the permission of their states. Here, the Counties will need to terminate their agreement to house civil immigrant detainees to comply both with State law and with the terms of their agreements.

### C. The Act is not implicitly preempted.

Because Congress has not expressly said its laws preempt state laws such as the Act, the Court must analyze whether a federal law implicitly preempts the Act. In doing so, there still is a presumption against preemption: Federal law should not be read to preempt state law unless Congress clearly intended to do so. *Altria Grp. v. Good*, 555 U.S. 70, 77 (2008); *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013). "In all cases" of preemption, express or implied, "the federal restrictions or rights that are said to conflict with state law must stem from

12

either the Constitution itself or a valid statute enacted by Congress." *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020). Implied preemption can be found under one of two theories—field and conflict preemption. The Counties argue that both apply but neither do.

### 1. Federal law does not demonstrate an intent to prevent states from legislating whether they will house civil immigrant detainees.

Field preemption occurs only "when the federal regulatory scheme is so pervasive or the federal interest so dominant that it may be inferred that Congress intended to occupy the entire legislative field." *Planned Parenthood of Ind. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 984 (7th Cir. 2012). Even in the face of comprehensive federal law, courts rarely find field preemption. *Kansas*, 140 S. Ct. at 805-06.

The Counties' conclusory allegations that the federal government occupies the field of "contracting for housing Federal immigration detainees" has no support in federal law. The Counties quote portions of five federal statutes, located in three distinct titles in the United States Code, but no statute supports their invention of this field.

First, 18 U.S.C. § 4013(a)(3) and 28 U.S.C. § 530C(a)(4) (Compl. ¶¶ 7, 10) do not relate to individuals detained for civil immigration violations. They authorize the Attorney General to make agreements generally, and make payments for housing persons in USMS custody specifically. As discussed above, the Act does not prevent the Counties from agreeing to house detainees in USMS custody. Second, neither 28 U.S.C. § 530C(b)(7) nor 8 U.S.C. § 1231(g) (Compl. ¶¶ 7, 10) mention contracting. Instead, they authorize the Attorney General to use funds for immigration detention and arrange for detention in various types of facilities. Given that two statutes do not mention contracting with states or their subunits, and the other two statutes apply to different federal detainees, the Complaint does not identify applicable federal law that could be

read to implicitly prevent the State from enacting a law controlling whether its subunits can contract to house federal civil immigrant detainees.[4]

Courts recognize that federal law regulates *how* state law enforcement may help in immigration enforcement, while state law controls *whether* they cooperate. *See, e.g.*, *City of El Cenizo v. Texas*, 890 F.3d 164, 177 (5th Cir. 2018) (rejecting preemption challenge to state law and recognizing state authority over whether to use their resources to support federal immigration enforcement). None of the identified statutes suggest that arrangement is different when the specific law enforcement resource at issue is a detention facility. Congress has not attempted to give federal officials authority to compel state facilities to house immigrant detainees because such a statute would be unconstitutional. *See Printz*, 521 U.S. at 928-935.

### 2. The Act cannot obstruct housing at state facilities when federal law does not and cannot require it.

Under conflict preemption, courts examine the federal statute allegedly preempting state law and identify its purpose and intended effects. This preemption analysis does not permit a "freewheeling judicial inquiry" into whether a state statute is in tension with federal objectives. *Chamber of Commerce v. Whiting*, 563 U.S. 582, 607 (2011). Mere tension with federal law is not enough to find preemption. *Id.*

The Counties argue that the Act stands as an obstacle to 8 U.S.C. § 1231(g). ECF 10 at 9. That statute asks ICE to "consider" using existing facilities in arranging for detention. There is no

---

[4] The Counties' memorandum in support of their motion for a preliminary injunction includes three additional statutory citations when discussing field preemption; again, none support finding a field that has preempted section 15(g) of the Act. *See* ECF 10 at 6 (citing 8 U.S.C. §§ 1225, 1103(a)(3), 1103(a)(11)(B). Section 15(g) does not impinge on the U.S. Attorney General's powers to arrest and detain individuals, create regulations and forms, or issue instructions, *see* 8 U.S.C. § 1226, § 1103(a)(3), nor does it interfere with him entering into agreements to house immigrant detainees with those who wish to "cooperat[e]," *see id.* § 1103(a)(11)(B). Section 15(g) of the Act directs only how State resources may be used.

14

tension, and certainly no conflict, between the plain text of the federal statute and the Act. *See Planned Parenthood of Ind.*, 699 F.3d at 985 ("Absent a conflict between state and federal law in the first place, state law cannot possibly stand as an obstacle to the accomplishment of congressional objectives."). Under the Act, the federal government is free to consider and arrange for appropriate places of detention—new or existing—it just may not use the State's – including its subunits'– facilities. If section 1231(g) required the State and its subunits to provide housing for federal immigration detainees, that law would commandeer the State to offer up its facilities whenever the federal government deemed those facilities suitable for detention. This result would violate the Tenth Amendment. The Counties' preemption claim should be dismissed.

## CONCLUSION

For these reasons, the Court should grant the Attorney General's motion to dismiss.

Dated: October 18, 2021

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

By: */s/ Kathryn Hunt Muse*
Christopher G. Wells
Kathryn Hunt Muse
Alex Hemmer
Eileen Boyle Perich
Office of the Illinois Attorney General
100 W. Randolph Street
Chicago, Illinois 60601
(312) 814-3000
kathryn.muse@ilag.gov

15