# Attachment 3



# McHenry County Sheriff's Office

2200 N. Seminary Avenue ▪ Woodstock, Illinois 60098 ▪ p: 815-338-2144
www.mchenrysheriff.org ▪ sheriff@co.mchenry.il.us

**BILL PRIM**
SHERIFF

October 14, 2021

Mark Fleming
National Immigrant Justice Center
224 S Michigan Av Suite 600
Chicago, Il 60604
mfleming@heartlandalliance.org

RE: FOIA Request dated 10/06/2021

Dear Mark Fleming,

Thank you for writing the McHenry County Sheriff's Office with your request for information pursuant to the Illinois Freedom of Information Act, 5 ILCS 140/1 et seq. On October 6, 2021 the McHenry County Sheriff's Office received your FOIA:

1.  All documents, communications, and records that reflect what portion of the revenue generated by the Intergovernmental Service Agreement is used to fund the custody and care of federal detainees under the agreement and what portion of the revenue is used to fund other aspects of county government, as described in paragraph 4 of Sheriff Prim's affidavit.

2.  All documents, communications, and records that support the claim in paragraph 6 of Sheriff Prim's affidavit where he states "I estimate that I will need to lay off 7 full-time corrections officers if the agree [i.e., Intergovernmental Service Agreement to house federal detainees] is terminated."

Herein enclosed attached to this email response. With respect to your first and second inquiry all documents are attached in responsive to your FOIA request.

## Your request is granted in full

You have a right to have the denial of your request reviewed by the Public Access Counselor (PAC) at the office of the Illinois Attorney General, 5 ILCS 140/9.5(a). You can file your request for review by writing to:

> Public Access Counselor, Office of the Attorney General
> 500 South 2nd Street, Springfield, Il. 62706
> Fax: 217-782-1396
> Email: publicaccess@atg.state.il.us



# MCHENRY COUNTY SHERIFF'S OFFICE

2200 N. Seminary Avenue ▪ Woodstock, Illinois 60098 ▪ p: 815-338-2144
www.mchenrysheriff.org ▪ sheriff@co.mchenry.il.us

**BILL PRIM**
SHERIFF

You also have the right to seek judicial review of your denial by filing a lawsuit in the State Circuit Court. 5ILCS 140/11.date of this denial letter. 5ILCS 1409.5(a). Please note that you must include a copy of your original FOIA request and this denial letter.

Sincerely,

Michelle Schroeder
Clerk II – Records Division
McHenry County Sheriff Office

21.0954                                                                    10/14

# NATIONAL IMMIGRANT JUSTICE CENTER
A **HEARTLAND ALLIANCE** PROGRAM

October 6, 2021

Duane Cedergren
Gail Bruens
FOIA Officers
McHenry County Sheriff's Office
Woodstock, IL 60098

*Sent via email to FOIAsheriff@mchenrycountyil.gov*

**Re: Freedom of Information Act Request**

Dear FOIA Officers:

Under the Illinois Freedom of Information Act ("FOIA"), 5 ILCS 140, I am requesting copies of the public records in the possession of the McHenry County Board relating to claims made in the Affidavit of Bill Prim, elected Sheriff of McHenry County, filed September 30, 2021 in the case of *McHenry County and Kankakee County v. Kwame Raoul*, Case No. 21-cv-50341 (N.D. Ill. filed Sept.1, 2021). I have attached a copy of Sheriff Prim's affidavit to this request.

1. All documents, communications, and records that reflect what portion of the revenue generated by the Intergovernmental Service Agreement[1] is used to fund the custody and care of federal detainees under the agreement and what portion of the revenue is used to fund other aspects of county government, as described in paragraph 4 of Sheriff Prim's affidavit.

2. All documents, communications, and records that support the claim in paragraph 6 of Sheriff Prim's affidavit where he states "I estimate that I will need to lay off 7 full-time corrections officers if the agree [i.e., the Intergovernmental Service Agreement to house federal detainees] is terminated."

We request that responsive records be produced in an electronic format, preferably in a portable document format (PDF).

Should you deny our request, or any part of the request, please state in writing the basis for the denial, including the specific exemption claimed to authorize the denial under 5 ILCS 140/7; 5

---

[1] *See* the agreement between the McHenry County Detention Center and U.S. Marshals Service. USMS IGA Contract - McHenry County, https://www.documentcloud.org/documents/21071119-mchenry-contract.

ILCS 140/9. In addition, should you claim exemption for a record which also contains any material which is not exempt, we request that you delete the information which is exempt and make the remaining available to us, as required by 5 ILCS 140/7.

The National Immigrant Justice Center (NIJC) is a non-profit, which represents the rights of immigrants and disseminates information and reports to educate the public on immigration policy matters. We request a waiver of all fees for this request. Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in our commercial interest. 5 ILCS 140/6(c).

We look forward to hearing from you in writing within five working days, as required by the Act, 5 ILCS 140/3(d). If you have any questions regarding this request, please contact Mark Fleming at (312) 660-1628 or mfleming@heartlandalliance.org.


Sincerely,

/s/ Mark Fleming
National Immigrant Justice Center
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
(t): 312-660-1628
Email: mfleming@heartlandalliance.org

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| MCHENRY COUNTY and KANKAKEE COUNTY, bodies politic and corporate, | ) ) ) |
| Plaintiffs, | ) ) Case No. 21 CV 50341 |
| v. | ) ) Judge Phillip G. Reinhard |
| KWAME RAOUL, in his official capacity as Illinois Attorney General, | ) ) Magistrate Judge Lisa A. Jensen |
| Defendant. | ) ) |

### AFFIDAVIT OF BILL PRIM

1.  I am the duly elected Sheriff of McHenry County, have personal knowledge of the facts contained herein and, if called as a witness, could competently testify as follows:

2.  As Sheriff, I have authority over the McHenry County Adult Correctional Facility. In 2003, McHenry County entered into an Intergovernmental Cooperative Agreement with the United States Marshals Service and the Immigration and Naturalization Service for the detention of federal inmates. A revised Detention Services Intergovernmental Agreement was entered into in 2014 to which the Bureau of Immigration and Customs Enforcement ("ICE") is also a party. This agreement continues in force to this day. A true and correct copy of the 2014 agreement is attached to the Amended Complaint (Doc # 7) as Exhibit A.

3.  Under the agreement, McHenry County receives a per diem of $95.00 for each federal detainee it houses, including ICE detainees. For the fiscal years 2016-2020, the McHenry County Jail housed, on average, 240 ICE detainees per day. This has resulted, for these five fiscal years, in more than $41 million of revenue for McHenry County.



PLAINTIFF'S
EXHIBIT
1

4.      The revenue generated by the agreement is not controlled by the Sheriff, but instead, is used to fund many aspects of county government.

5.      Without the revenue from the agreement, the county will need to increase the amount of tax collected to offset the loss or make budgetary cuts.

6.      I estimate that I will need to lay off seven full-time corrections officers if the agreement is terminated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: ___9/30/21___

_____
Bill Prim

2

<u>MCSO-Cost per inmate using marginal cost</u>

**Marginal Cost**- only includes those costs directly related to prisoners which *change immediately as prisoner counts increase or decrease.* To calculate marginal cost, a detailed line-item budget was used to distinguish between marginal and fixed costs that are specific to McHenry County Corrections.

Accounting:

**Total marginal cost / annual ADP = annual cost per inmate**
**Annual cost per inmate / 365 = marginal cost per inmate per day**

1. Calculate the total marginal cost by totaling all variable costs (meals, clothing, bedding, inmate healthcare, etc.)
2. Calculate the annual ADP
3. Divide the total marginal cost by the annual ADP. This will give you the annual cost per inmate.
4. Divide the annual cost per inmate by 365. This will give you the cost per inmate per day.

| Item | Cost Factor | Amount |
|------|-------------|--------|
| A | Inmate Healthcare | $ 1,675,200 |
| B | Inmate Food | $ 715,000 |
| C | Miscellaneous Care of Prisoners | $ 65,000 |
| D | Total Marginal Cost (A+B+C) | $ 2,455,200 |
| E | ADP(Average Daily Population | 310 |
| F | Annual Cost per ADP (D/E) | $ 7,920 |
| G | Days in Year | 365 |
| H | Daily Cost per ADP (F/G) | $ 22 |

| Marginal | Fixed |
|----------|-------|
| **Inmate Healthcare** | **Utilities** |
| **Food** | **Staff Salaries/fringe benefits** |
| **Inmate Clothing** | **Administration (HR, Legal, Fiscal)** |
| **Inmate bedding** | **Furniture & Fixtures** |
| **Supplies-such as cleaning** | **Equipment & Maintenance** |

*Note: Some of the fixed costs would decrease if the ICE Contract were to be terminated. Those costs such as water usage, electricity, gas and other utilities are currently incurred and tracked on a whole-building basis instead of on a per unit basis. Raw estimates could be looked into; however, those could be under or over reported if estimated. These costs are currently not included in the $22 (Column H = Daily Cost per ADP (F/G)).*

# FEDERAL DETAINEE PROGRAM UPDATE



# AGENDA

- Average Daily Detainees
  - Full Year
- Discussion on cost
  - High Rate
    - Fixed & Variable Cost
    - Variable Only Cost
  - Low Rate
    - Fixed & Variable Cost
    - Variable Only Cost
- Revenues, Expenses and Surplus (Deficit)
- Overall Comparison
  - Revenues
  - Surplus (Deficit Charts)




# HIGH-RATE VS LOW-RATE

## HIGH RATE

- Variable Cost
    - Assumes all cost factors are spread across all detainees (no differentiation between County inmates and immigration-related detainees)
- Fixed Cost
    - Includes costs the County would incur regardless of the type or number of inmates such as:
        - Building Maintenance
        - Mandated Officer Training
        - Salary allocation from other departments

## LOW RATE

- Variable Cost
    - Breaks the cost down to immigration-related detainees only (i.e. spreads the cost of meals down to the number of ADP)
- Fixed Cost
    - Excludes costs the County would have to incur even if the immigration program were not in place
        - Building Maintenance
        - Mandated Officer Training
        - Salary allocation from other departments

## DISCUSSION ON COST – HIGH RATE

### Variable Cost

**These costs vary depending on the number of detainees**

- Healthcare
- Food
- Clothing/Bedding
- Inmate Supplies
- Salaries

$43.22 per average daily detainee

### Fixed Cost

**These costs will remain in place regardless of the program being active or not**

- Utilities
- Safety & Sanitation
- Maintenance & Maintenance Supplies
- Administration/Office Exp
- Equipment and Maintenance
- Vehicle Maintenance
- Building Maintenance
- Officer Training
- Liability Insurance
- Salaries from other Dept allocated

$9.20 per average daily detainee

# REVENUES & EXPENSES (FULL YEAR) – HIGH RATE (VARIABLE & FIXED COST)

| | FY2016 | FY2017 | FY2018 | FY2019 | FY2020 | FY2021 |
|---|---|---|---|---|---|---|
| Revenues | $ 7,463,580 | $ 8,312,785 | $ 9,519,665 | $ 9,666,535 | $ 6,563,360 | $ 882,075 |
| Expenses (Inc. Fixed Costs) | $ 3,756,633 | $ 4,213,557 | $ 4,928,802 | $ 5,112,200 | $ 3,538,296 | $ 486,720 |
| Surplus (Deficit) | $ 3,706,947 | $ 4,099,228 | $ 4,590,863 | $ 4,554,335 | $3,025,064 | $395,355 |

Revenue: *$95/day/detainee
*Expenses include fixed-cost plus variable cost – adjusted for inflation for FY2016 through FY2020
Variable Cost: $43.22 + Fixed Cost: $9.20 = $52.42 (FY2021)

## REVENUES & EXPENSES – HIGH RATE (VARIABLE ONLY)

| | FY2016 | FY2017 | FY2018 | FY2019 | FY2020 | FY2021 |
|---|---|---|---|---|---|---|
| Revenues | $ 7,463,580 | $ 8,312,785 | $ 9,519,665 | $ 9,666,535 | $ 6,563,360 | $ 882,075 |
| Expenses (Variable Costs Only) | $ 3,097,323 | $ 3,474,055 | $ 4,063,770 | $ 4,214,980 | $ 2,917,306 | $ 401,298 |
| **Surplus (Deficit)** | $ 4,366,257 | $ 4,838,730 | $ 5,455,895 | $ 5,451,555 | $ 3,646,054 | $ 480,777 |

Revenue: *$95/day/detainee
**Expenses include variable cost only – adjusted for inflation for FY2016 through FY2020**
**Variable Cost: $43.22 (FY2021)**

# DISCUSSION ON COST – LOW RATE

## Variable Cost

**These costs vary depending on the number of detainees**

- Healthcare (adjusted for population)
- Food (adjusted for population)
- Clothing/Bedding (adjusted for population)
- ~~Inmate Supplies~~
- Salaries

$22.08 per average daily detainee

## Fixed Cost

**These costs will remain in place regardless of the program being active or not**

- Utilities
- Safety & Sanitation
- Maintenance & Maintenance Supplies
- Administration/Office Exp
- Equipment and Maintenance
- Vehicle Maintenance
- ~~Building Maintenance~~
- ~~Officer Training~~
- Liability Insurance
- ~~Salaries from other Dept allocated~~

$3.48 per average daily detainee

## REVENUES & EXPENSES (FULL YEAR) – LOW RATE (VARIABLE & FIXED COST)

| | FY2016 | FY2017 | FY2018 | FY2019 | FY2020 | FY2021 |
|---|---|---|---|---|---|---|
| Revenues | $ 7,463,580 | $ 8,312,785 | $ 9,519,665 | $ 9,666,535 | $ 6,563,360 | $ 882,075 |
| Expenses (Inc. Fixed Costs) | $ 1,831,327 | $ 2,054,570 | $ 2,403,966 | $ 2,492,949 | $ 1,725,127 | $ 237,232 |
| **Surplus (Deficit)** | **$ 5,632,253** | **$ 6,258,215** | **$ 7,115,699** | **$ 7,173,587** | **$ 4,838,233** | **$ 644,843** |

Revenue: *$95/day/detainee
**Expenses include fixed-cost plus variable cost – adjusted for inflation for FY2016 through FY2020**
**Variable Cost: $22.08 + Fixed Cost: $3.48 = $25.55 (FY2021)**



GROSS REVENUES (FY2016 – FY2020)

# NET SURPLUS – FROM HIGH TO LOW RATES



| | Surplus (Deficit) - High Rate Total | Surplus (Deficit) - High Rate Variable Only | Surplus (Deficit) - Low Rate Total | Surplus (Deficit) - Low Rate Variable Only |
|---|---|---|---|---|
| FY2016 | $3,706,947 | $4,366,257 | $5,632,253 | $5,881,301 |
| FY2017 | $4,099,228 | $4,838,730 | $6,258,215 | $6,538,224 |
| FY2018 | $4,590,863 | $5,455,895 | $7,115,699 | $7,443,376 |
| FY2019 | $4,554,335 | $5,451,555 | $7,173,587 | $7,513,442 |
| FY2020 | $3,025,064 | $3,646,054 | $4,838,233 | $5,073,132 |

## REVENUES & EXPENSES – LOW RATE (VARIABLE ONLY)

| Column1 | FY2016 | FY2017 | FY2018 | FY2019 | FY2020 | FY2021 |
|---|---|---|---|---|---|---|
| Revenues | $ 7,463,580 | $ 8,312,785 | $ 9,519,665 | $ 9,666,535 | $ 6,563,360 | $ 882,075 |
| Expenses (Exc. Fixed Costs) | $ 1,582,279 | $ 1,774,561 | $ 2,076,289 | $ 2,153,093 | $ 1,490,228 | $ 205,013 |
| Surplus (Deficit) | $ 5,881,301 | $ 6,538,224 | $ 7,443,376 | $ 7,513,442 | $ 5,073,132 | $ 677,062 |

Revenue: *$95/day/detainee
**Expenses include variable cost only – adjusted for inflation for FY2016 through FY2020**
**Variable Cost: $22.08 (FY2021)**



# McHenry County Adult

# Correctional Facility

# 2019 Staffing Analysis





# McHenry County Sheriff's Office
# Corrections Division

## Introduction

The purpose of this report is threefold.  First, to provide a summary/profile of the McHenry County Sheriff's Corrections Division to those individuals who may not be familiar with the operations of the Division, and yet are called upon to make or approve recommendations affecting it.  Secondly, to provide an overview of the common methodologies and best practices behind determining appropriate staffing levels within the Corrections Division.  Lastly, to make observations and offer recommendations with regard to staffing and operations based on the data gathered and assembled.  Included in those observations and recommendations will be a discussion surrounding the implementation and staffing of the 'E-pod' or 'Block 6' which is currently being brought back to operational readiness for possible expansion of the contract bed program.

Every facility is different and as such, each staffing analysis will need to be customized for that particular facility.  As it will be discovered when looking through the accompanying charts, diagrams and data sets, there are a myriad of topics that could be explored further.  This report will focus on several key areas that seem to be of greatest significance as it relates to this particular facility.

The report is organized into four main sections.  The first section explains the methodology and best practice of determining staffing levels.  Section 2 will provide a profile of the facility.  Section 3 will briefly examine the current operations of the Corrections Division and section 4 will outline specific observations regarding current practices and provide recommendations.  Charts and diagrams are all assembled under appendices at the end of the report because they are often referred to in multiple sections of the report.  Data sets are included for further discussion and to provide credibility to the resulting summary charts and diagrams.

1

## Section 1:  Determining Staffing Levels – Best Practice

The most commonly utilized and accepted method in determining appropriate staffing levels for correctional facilities is to identify specific staffing patterns within the correctional facility and develop a shift relief factor based on the number of net annual work hours (NAWH) for each category of employee.  This procedure was developed through the National Institute of Corrections (NIC) and has become the standard practice for correctional facilities.

A shift relief factor (SRF) is an expression of the total number of hours that need to be worked at one post divided by the number of hours that the "average employee" in the job classification assigned to that post is available to work.  A shift relief factor identifies the number of hours that staff who work essential posts are actually available to work.  It accounts for the use of leave, training time and other factors such as vacancies, which result in staff not being available to work a post.  A shift relief factor, when combined with an appropriately documented staffing pattern provides a way to move from the number of people who are needed on one day to the number needed for 24/7 coverage.

Staffing within a correctional facility is unique in that many of the established posts must be filled regardless of the particular work load.  Unlike an support type of position that can go unfilled if the employee becomes ill or takes a vacation, a static post in corrections must be filled.  You cannot leave inmates unsupervised in a housing unit.  If there are not enough regular staff to fill the position, then it must be filled through the use of overtime.  Once an SRF has been established and posts identified, the only way to make changes with regard to staffing those particular posts is to either get staff to work more, or reduce the number of posts that must be staffed.

Because there are some posts that may not be staffed every day or on every shift, different shift relief factors must be developed.  Additionally, there will be some posts that do not need an availability factor.  For example, if a post is only filled on a Monday through Friday basis and does not need to be filled if the Officer assigned to that post calls in sick or is on vacation, then the shift relief factor for that particular post would be 1.  This is most commonly assigned to support positions.

In addition to static posts, there are also a number of positions that are staffed based on a workload factor.  In a correctional facility, these positions are commonly found in areas like booking/processing, supervisor positions and internal transport assignments.  Determining the number of posts

2

needed for these types of assignments is based on workload and adjusted over time to account for changes.

Although the development of a specific SRF is an important and major component for determining appropriate staffing levels, there are a variety of other factors that influence staffing that must be examined as well. An appropriately developed SRF is most appropriately utilized as information and reference when making staffing allocation decisions.

Information obtained from other sheriffs' departments will be used to a limited extent in this study but not for the purpose of determining appropriate staffing to inmate ratios or staffing to supervisor ratios. Using a staffing ratio to compare one facility to another will produce inaccurate results. There are too many differing factors from one facility to another making it difficult, if not impossible to compare the two. For example, a facility's design plays a major role in the amount of staffing required. A facility with smaller housing units will require more staff to supervise the same number of inmates in a facility with larger housing units.

Supervisor ratios will also vary from facility to facility based on different responsibilities assigned to the Corrections Division. In some facilities for example, jail staff are responsible for external transportation of inmates and have supervisors specifically assigned to this task. In other facilities, Correctional Officers are responsible for the supervision and transportation of inmates to and during court appearances and have supervisors specifically assigned. Finally, the number of days staff is available will vary from facility to facility based on a number of factors including schedules, use of benefit time and training.

3

## Section 2:  Facility Profile

The Corrections Division of the McHenry County Sheriff's Office operates continuously, 24 hour per day, 365 days a year.  The first and second floors of the current facility were built in 1991, with a third floor roughed in for future expansion.  In January of 2005 work began to complete the third floor, along with an expansion/renovation of the kitchen, laundry and booking areas. In addition a new lobby, Right's Court Room, video visitation area, and administrative offices were added to the front of the facility.  The third floor was built out specifically to house Federal ICE Detainees.  The third floor was completed in October of 2005, and the remaining construction was completed in the spring of 2006.[1] The Sheriff's Office is currently seeking accreditation through the Commission on Accreditation for Law Enforcement Agencies (CALEA), the American Correctional Association (ACA) and the National Commission on Correctional Health Care (NCCHC).

The facility is currently staffed by one (1) Chief, four (4) Lieutenants, sixteen (16) Sergeants, one hundred forty-seven (147) Officers and one (1) administrative assistant.  Correctional staff are not sworn officers and do not have police powers.  In 2018, the turnover rate for Correctional Officers was 4.7%.  Six (6) Officers resigned their position and one (1) retired.  For comparison, the Bureau of Labor Statistics average turnover rate in January of 20189 was 3.7% across all industries.[2]  New Officers go through a minimum of fifteen (15) weeks of training prior to being placed in an assignment.  Training consists of a six (6) week in-house training academy, a five (5) week Basic Correctional Officer Academy for state certification and anywhere from 4-6 weeks of on-the-job training with a senior Officer.  Medical and Food services are provided to the inmate/detainees through contracted agencies.

The rated capacity of the jail is 650 beds made up of a combination of physical layouts and management styles summarized in appendix 1.  County inmates and Female I.C.E. detainees are housed in podular-remote, indirect supervision housing units.  Male I.C.E. detainees are housed primarily in podular-direct supervision units.

The facility houses inmates awaiting trial in criminal cases, as well as those that have been sentenced to the County facility. An inmate can be held at the facility until they can post bond or are sentenced. After an inmate is sentenced, they can be detained at the County facility for up to 364 days. Anyone sentenced to more than 364 days would be taken to the Illinois

---

[1] www.co.mchenry.il.us/Common/CountyDpt/Sheriff/ShrCorrections.asp
[2] www.bls.gov/news.release/pdf/jolts.pdf

4

Department of Corrections to serve their sentence. The facility also houses an extensive amount of contract inmates for other agencies, the majority being I.C.E. detainees.

The total average daily population (ADP) in the jail for all categories during 2018 was 474 inmates, up from 438 the previous year.

The mission of the Sheriff's Office is stated as follows:[3]

> "*The essential purpose of the McHenry County Sheriff's Office is to provide service and protection to the citizens of McHenry County. The Office serves the citizens of McHenry County by performing the law enforcement function in a professional manner and it is to these citizens that the Office is ultimately responsible. The Sheriff's Office protects the right of all persons within its jurisdiction to be free from criminal attack, to be secure in their possessions and to live in peace. A large urban society free from crime and disorder remains an unachieved ideal; nevertheless, consistent with the values of a free society, it is the primary objective of the McHenry County Sheriff's Office to as closely as possible approach that ideal. In doing so, the Department's role is to enforce the law in a fair and impartial manner, recognizing both the statutory and judicial limitations of police authority and the constitutional rights of all persons*"

Correctional Officers are organized and represented by the Fraternal Order of Police (FOP) and operate under a labor agreement effective through November 30, 2018. Supervisors (Sergeants and Lieutenants) are not organized and fall under the general personnel policies of McHenry County.

Operational and staffing issues within Sheriff's Correctional facilities are influenced by a number of both internal and external factors, some of which include:

- McHenry County Sheriff's General Orders
- McHenry County Sheriff's Personnel Manual
- McHenry County Personnel Manual
- McHenry County Sheriff Adult Correctional Division Post Orders
- Illinois County Jail Standards
- Illinois Compiled Statutes – County Jail Act
- I.C.E. Detention Standards
- American Correctional Association (ACA) Standards
- Illinois Fraternal Order of Police Labor Agreement

---

[3] www.co.mchenry.il.us/Common/CountyDpt/Sheriff/default.asp

5

Although this report will not attempt to extrapolate each individual policy or standard affecting staffing, it is important to recognize their existence and potential impact on operational and staffing decisions. While some are specific and not able to be changed, there are many such as labor agreements and Sheriff's General Orders that can be modified if need be to make better use of staffing.

6

## Section 3:  Review of Current Corrections Division Operations

The roles of corrections staff are typically expressed as posts for both supervisors (Correctional Sergeants) and line staff (Correctional Officers).  A staffing pattern identifies where staff members are assigned to work, including time and location and function.  Due to the static nature of many assignments within a correctional facility, staffing needs are determined to a great extent by the number of posts rather than specific workloads.  The following is a brief description of each post along with some of the main responsibilities of staff assigned.  The term 'away relief' refers to whether or not the position requires backfill if the individual normally assigned is on vacation or out sick.  The term 'break relief' refers to whether or not the post requires backfill when the individual assigned goes to dinner or takes a break.  An individual assigned to a housing unit, for example, must be relieved prior to going on break because a housing unit can never be left unsupervised.  The overall staff coverage plan is summarized in appendix 8. A housing capacity and supervision summary is outlined in appendix 1.

Supervisory Staff (Correctional Sergeants)

Sergeants assigned to the Corrections Division report directly to the Corrections Lieutenant.  There are two areas of assignment for Sergeants within the Corrections Division; Shift Sergeant and Support Sergeant. According to their job description they are responsible for the following:[4]

- Supervise and direct the work activities of all assigned personnel.
- Defines, monitors, and evaluates individual assignments of subordinates.
- Reviews and approves reports of subordinates for accuracy and completion and counsel on errors when appropriate.
- Interprets, conveys, and ensures the implementation of Sheriff's Office/Division policies, procedures, and methods.
- Assists with the training and orientation of new employees and the continued training of experienced officers.
- Schedule work shifts and approve/disapprove requests for leave.
- Evaluates subordinates' performance.
- Recommends remedial training or discipline to higher authority.
- Investigate public complaints.
- Conducts staff line inspections.
- Act as Incident Commander when appropriate.
- Maintain effective security for detainees/inmates and staff of the Corrections facility.

---

[4] McHenry County Sheriff Adult Correctional Division JD 7.4.5

7

- Investigate and make recommendations regarding inmate incidents.
- Ensures that all planned daily activities, such as: Sick Call, medications, transports, recreation, library, Bond Court, volunteer programs, laundry, meals, mail, shakedowns, and inspections, are conducted.
- Insure all property assigned to the Corrections facility is present and accounted for.
- Conduct a minimum of one (1) facility rounds each shift.
- Ensure detainees/inmates are never left unsupervised.
- Visually inspect detainee/inmate living areas.
- Report any disciplinary infractions to the Shift Lieutenant.
- Ensure all Detainee/Inmate Requests, Sick Call Requests, and Grievances are delivered to appropriate personnel.
- Ensure detainees/inmates are escorted and supervised during visitation, religious activities, and educational activities, to and from Substance Abuse training.
- Conduct an inspection of all individual security and communication equipment.
- Maintain proper count procedures.
- Maintain radio contact with Central Control.
- Brief oncoming Shift Lieutenant/Sergeant of all necessary information.
- Verify the identity and reason for release of all detainees/inmates from Booking.
- Ensure all files in Booking are maintained, organized, and updated on a regular basis.
- Ensure all detainee/inmate information in the computer is accurate and up to date.
- Ensure all information from Court Dispositions is entered into the computer, Court Orders are followed, obtains clarification on Court Orders that are unclear, sentence computations calculated, and proper fingerprints taken for each inmate in custody.
- Ensure that all detainees/inmates' property is properly inventoried and returned to detainees/inmates upon release and that all detainees/inmates entering the facility are properly searched.
- Ensure that inmate "NO CONTACT" records are maintained.
- Ensure that inmate "HOLDS" have been properly placed on detainees/inmates in custody and detainees/inmates that are being held at other agencies for the Department.
- Ensure that each inmate processed in Booking has proper and complete paperwork for Bond Court.
- Verify the identity and reason for release of all detainees/inmates from Booking
- Ensure all detainee/inmate information in the computer is accurate and up to date.

8

- Oversee the operations of the ICE Transport Teams.
- Confer with ICE on a daily basis, checks records, and arranges transports of detainees.
- Work with the general public, Public Defender's Office, and States Attorney's Office in regards to warrant matters.
- Work with the Social Security Board to stop government checks for people on Social Security who have outstanding felony warrants.
- Files needed paperwork and makes arrangements for the execution of Governor's Warrants.
- Respond to teletypes from other agencies and validates records in LEADS.
- Pull hard copies of warrants and ensures that they are taken out of LEADS when a quash order is issued by the courts.
- Arrange transportation for extraditions on felony warrants that are out of state.
- File and process civil warrants, body attachments, criminal, and juvenile warrants.
- Work with the MCSO Apprehension Unit and the U.S. Marshalls in the processing and arrangement for service of warrants.

## Correctional Officers

Officers assigned to the Corrections Division report to the Corrections Sergeants. According to their job description and based on their particular post assignment, they are generally responsible for the following:[5]

- Maintain interior and exterior security of a detention facility and persons contained therein. To include physically conducting routine and random security checks of detainees/inmates and the building.
- Receive, process, and release detainees/inmates.
- Possess working knowledge of emergency/evacuation procedures.
- Operate various electronic control room/panels and video monitors in a safe and efficient manner.
- Conduct detainee/inmate escorts/transports.
- Maintain life functions for detainees/inmates, including, but not limited to exchanging laundry, serving meals, and furnishing hygiene products.
- Responds to calls for assistance on a non-emergency/emergency basis in all areas of the facility as needed.
- Prepare related reports and documents.
- Appear in court as witness/complainant to provide testimony.
- Operate various computers and office equipment as required.

---

[5] McHenry County Sheriff Adult Correctional Division Post Order #1-13

9

- Directly supervise activity in detainee/inmate housing areas.
- Conduct accurate headcount of housed detainees/inmates.
- Gather and preserve evidence/found property.
- Conduct initial investigation of crime scenes/incidents that occur within the facility and gather related facts and statements.
- Performs public relations duties with the public and any other law enforcement agencies in relation to inquiries about detainees/inmates.
- Initiate detainee/inmate disciplinary procedures.
- Transports juveniles upon receipt of orders from the court.
- In the event of an emergency, performs duties of a Deputy Patrol Officer (see Divisional Addendum – Deputy Patrol Officer in the General Orders).
- The primary duty of all Shift Officers is care, custody, and control.
- Be positioned so that he/she can see, hear, and respond to all activities, detainee/inmate movements, and, if needed, an emergency occurring on their assigned post.
- Escort Kitchen Detainee/Inmate Workers into housing areas when delivering meals.
- Visually inspect detainee/inmate living areas.
- Ensure all reports are clear, concise, and complete.
- Have a Sergeant or Lieutenant review all reports.
- Escort and supervise detainees/inmates during visitation, religious activities, educational activities, and to and from Substance Abuse training.
- Properly address and handle detainee/inmate problems and concerns.
- Responsible for the welfare and safekeeping of detainees/inmates under his/her control.
- Report to the Sergeant or Lieutenant any unusual incidents or suspicious actions.
- Advise Shift Sergeant of any medical incidents.
- Conduct an inspection of all individual security and communication equipment.

Within the Corrections Division there are currently thirteen (13) distinct post assignments identified. These are outlined in appendix 8 and summarized below:

Reception (Front) Desk Post – Responsible for interacting with all those entering the facility for service through the front lobby. This would include registering individuals for visits, and checking program volunteers in and out of the facility. This post is staffed with two (2) armed Correctional Officers on the Day and Afternoon shift. This post requires both break and away relief.

10

<u>Property Control Post</u> – Responsible for the inventory and maintenance of the inmate property room. This post is assigned to a specific individual on a regular basis for consistency and accountability. The post is staffed on the Day and Afternoon Shift Monday through Friday and requires away relief but not break relief.

<u>Booking Post</u> – Responsible for the processing of all individuals into and out of the facility as well as the monitoring of inmates/detainees housed in the booking area. This post is staffed with five (4) Officers on both the Days and Afternoons, and four (3) Officers on Midnights, 7-days/week. Three (3) of these posts require both away and break relief (there is a minimum of three (3) Officers required to be in the Booking Area at all times). The remaining posts require away relief but not break relief.

<u>Court Officer Post</u> – Responsible for retrieving inmates/detainees from their housing units, supervising them in the court holding area and transporting them to/from court hearings. There are eight (8) Officers assigned to the courts to cover six (6) court rooms and I.C.E. video teleconference court. If/when all the court rooms are in session simultaneously, an Internal Officer from the jail will be assigned to supervise the lower level bullpen area. These posts require away relief, but not break relief as their breaks are built into the court schedule. Civil and Juvenile courts are not factored into these posts due to the intermittent nature of their use. When these courtrooms are in operation, Internal Officers from the jail will be utilized to cover them.

<u>Internal Transport Post</u> – Responsible for escorting inmates/detainees within the facility, escorting medical personnel during med pass and responding to emergency calls. This post is also used to fill in when necessary in the Bullpen, hospital assignments and special details. There are five (5) internal transport posts on both Days and Afternoons, and two (2) on Midnights 7-days/week. These posts all require away relief, but not break relief.

<u>External Transport Post</u> – Responsible for transporting inmates outside the facility to various appointments, off-site court appearances and the pick-up of individuals on holds at other departments. This post is staffed by six (6) Correctional Officers on the Day Shift only Monday through Friday. These posts require away relief, but not break relief.

11

External (I.C.E.) Transport Post – Responsible for the daily transportation of I.C.E. detainees to various locations for court and deportation hearings. This post is staffed by five (5) Correctional Officers, Monday through Friday. They require away relief, but not break relief.

Classification Post – Responsible for the classification and housing of all inmates within the facility. This post is staffed by two (2) Correctional Officers on the Day Shift, Monday through Friday. This post does not require away relief or break relief.

Training Post – Responsible for the training activities of all staff assigned to the Corrections Division. This post is staffed with three (3) Correctional Officer on the Day Shift, Monday through Friday (or as needed based on scheduled training). This post does not require break or away relief.

Programs Post – Responsible for administering the inmate commissary program and the inmate/detainee phone system. Oversees repairs and maintenance of all security equipment, janitorial supplies and items issued and/or used by inmate/detainees. This post is staffed with two (2) Correctional Officers on the Day Shift and does not require away or break relief.

Quartermaster Post – Responsible for all equipment and uniforms issued to Corrections Staff. Maintains an inventory of all equipment issued. This post is also used extensively to 'fill-in' where needed throughout the day with transport or court duties. This post is staffed with one (1) Correctional Officer on the Day Shift, Monday through Friday and does not require break or away relief.

Central Control Post – Responsible for monitoring cameras and all doors throughout the facility. Perimeter security and internal circulation must be controlled at all times. Central control is staffed with one (1) Correctional Officer on each of the three shifts seven days a week. This post requires both break relief and away relief.

Housing Block Posts – Responsible for monitoring inmate activities within each housing block. Housing Blocks are divided into a number of individual 'sub-posts':

Section Control Posts – Responsible for monitoring intercoms, cameras and operating all security doors within each individual housing section. These posts are staffed 24-hours/day 7-

12

days/week. Each control block has three Correctional Officers assigned who between them are responsible for all of the activities within their assigned block, including 30-minute clock rounds and relieving one another for breaks/meals. In calculating staff coverage for these areas, two (2) of the Officers are calculated as needing break relief and the third as not requiring break relief. All three positions require away relief.

Section Direct Supervision Posts – Responsible for the direct monitoring of all inmates assigned to the direct supervision housing unit. These posts are staffed on the day and afternoon shift 7-days/week. These posts are covered by the Control Post on the midnight shift. This post requires both break and away relief.

Special Detail Assignments – The calculations and post assignments in this report do not address special detail assignments such as the Road Crew or additional staff temporarily assigned to the Training Division.

## Current Schedule Rotation

Both Correctional Officers and Sergeants work the same schedule rotation. Officers and Sergeants work one of three 8 ½-hour shifts. For 'general assignment posts' the established hours are:

Day Shift runs from 0600 to 1430
Late Day Shift runs from 0800 - 1600
Afternoon Shift from 1400 – 2230
Night Shift from 2200 – 0630

There is a half hour overlap for shift change. Officers may bid to work on a different shift based on their seniority, but do not rotate from shift to shift on a scheduled basis. The current schedule, commonly referred to as a 5/2-5/3 rotation, consists of 5 working days followed by 2 off days then 5 working days followed by 3 off days. It is a very commonly used and popular schedule within law enforcement and corrections.

Although staff work an 8½ hour shift, they accrue and are paid for a straight 80 hours each pay period. This is a labor agreement worked out to even out the fluctuation of days worked within each pay period of the 5/2-5/3 rotation. Because of this, the shift relief factor used in this report is

13

calculated based on an 8-hour shift. The half hour overlap for shift change has no bearing in this case on the relief calculation.

The 5/2-5/3 rotation has a total of three distinct patterns or groupings. In other words, three Officers could have different sets of days off. This particular schedule takes 105 days to repeat. During a 28-day (Garcia) cycle, the number of hours worked range from a low of 144 to a high of 160, well below the limit of 171 requiring time and a half compensation. Appendix 9 illustrates the current schedule being used.

## Shift Minimums

Time off for Correctional Officers is granted or denied based on a number of factors. Officers may select and bid on vacation days at the beginning of each year. During this bidding period, up to five (5) Officers may be granted on Day and Afternoon Shift. On the Night Shift, up to three (3) Officers may be granted time off and on Late Day Shift up to two (2). These vacation maximums apply only to actual 'vacation' benefit days and only during the official vacation bidding time period.

Outside of the vacation bidding process, staff may request time off based on contractually agreed upon shift minimums. In other words, there is an agreed upon minimum number of staff that must be scheduled and working. If staffing numbers are above that minimum, there is the opportunity for staff to request and be granted the day off. Conversely, if there happens to be less staff scheduled for that shift, overtime must be utilized to bring the staffing back to minimum. Currently established minimums are as follows:

24 scheduled – Day Shift

13 scheduled – Late Day Shift

24 scheduled – Afternoon Shift

12 scheduled – Night Shift

## Shift Relief Factor

Appendices 2-4 illustrate how the shift relief factor is computed for the various position classification factors. Each appendix has an attached payroll sheet that summarizes the benefit time taken during 2018, which is used in calculating the shift relief factor. Appendix 5 summarizes the currently

14

established posts within the Corrections Division. Based strictly on the current classification factors and established posts, there are approximately 177 Correctional Officers needed. This does not take into account special details or the opening of an additional housing unit (E-pod). This does not necessarily mean that an additional 30 Correctional Officers need to be hired. This number is merely a guideline to work from and explain where a portion of the overtime salaries are going.

15

## Section 4:  Observations and Recommendations

Corrections Division Mission Statement – There does not appear to be a formal mission statement for the Corrections Division.  The Sheriff's Office mission is defined as providing service and protection to the citizens of McHenry County.  It is common, and very appropriate for jails to define, either formally or informally, the reason for their existence as maintaining "safe and secure custody".  It can often be a very valuable and worthwhile exercise to discuss and formalize a mission statement specific to the Corrections Division to assist and guide decisions made regarding allocation of resources.  For example, the Corrections Division currently has a variety of educational and religious programming available for the inmate population.  The importance and priority of providing inmates with educational and rehabilitative programming will depend to a great extent on the resources directed to it.  Additionally, the Sheriff has clearly demonstrated a commitment to staff development through ongoing training and leadership development.

A well run correctional facility provides an excellent training ground for individuals regardless of their future employment.  Staff who develop skill in managing the inmate population in this type of setting have a great base for working in just about any career endeavor.  A well-defined and specific mission statement would formalize and provide guidance for all staff in daily decisions.

Staffing Coverage and Current Shift Relief Factor -  The shift relief factor for all position classifications in the Corrections Division are all relatively high, requiring over 2 (2.04) Correctional Officers to fill each identified post.  A portion of this can be attributed to several staff members with extended military commitments as well as several with serious medical conditions. Sick/medical type issues also account for a large percentage of overtime dollars expended.  Policies regarding the use of benefit time can have a great effect on how it is either used or not used.  For example, a "use it or lose it" policy for accumulated benefit time often creates a greater use of benefit time because employees feel that they are entitled to the benefit time and aren't willing to lose it because they aren't using it.  The establishment and enforcement of policy designed to prevent abuse of sick benefit leave can also have a great impact on its use.

The use of compensatory time also seems to play a role in the high SRF. This becomes cyclical as staff work overtime and accumulate compensatory time and then create overtime opportunities for others when they take that compensatory time off.  Through labor/management negotiations, there

16

have been shift minimums established as well as vacation bid minimums that appear to be quite high. In many cases the minimums agreed to are significantly higher than what is required to allow everyone to utilize their benefit time. The fact that staff accrue more benefit time as they gain seniority must be taken into consideration when establishing shift minimums as well.

Use of Overtime – In FY2018, approximately $768,272 in overtime dollars was spent to staff the jail. Much of this is due to the staffing patterns outlined above. Although there will always be a need for a certain amount of overtime, some reductions may be gained by hiring additional employees to fill some of the positions currently being staffed with overtime dollars. The recommendation would be to start small to ensure a reduction in overtime dollars is realized. If there are not reductions, the position could be eliminated through attrition. The average overtime rate paid to staff is $37.95/hour and the estimated costs including benefits for a new Correctional Officer is approximately $50,066.

Inmate Population – As mentioned above, decreasing or combining established posts is one method of reducing the number of staff required to operate the jail. The McHenry County Jail is fairly unique in the makeup of the inmate population. Typically the number of inmates being held on a pre-trial basis is significantly higher than those serving a county sentence. At the McHenry County Jail, however the opposite is true. Approximately 28% of the county inmate population is in a pre-trial status, while almost 72% are serving some type of county sentence in the jail. Inmates serving a sentence in the county jail are generally considered to be of the lowest risk from a classification standpoint. These inmates have generally committed misdemeanor offenses of such a nature that the sentence they received was less than a year. It would appear that this would open up opportunities for the Sheriff's Office and the judiciary to explore alternatives to incarceration such as electronic monitoring (ankle monitor).

There are a number of ways to set up and administer electronic monitoring programs. For example, they can be set up as sentencing alternatives to give judges the option of sentencing someone directly into the program. They could be set up as a step down program for those who have completed a portion of their sentence. Some communities have implemented programs for pre-trial inmates who may not be appropriate to hold in jail, but too much of a risk for the judge to let out on bond without supervision. Regardless of how these programs are set up, care must be taken to ensure they don't 'widen the net' as opposed to actually reducing the number of inmates housed in the jail. Net widening occurs when inmates are sentenced or placed in the program to a higher degree of supervision than

17

they would have been prior to the program being established. In other words, if a judge places someone on electronic monitoring that prior to the program being established he would have just released on bond, use of the program does not reduce the number of county inmates housed in the jail.

Reducing the county jail population would provide additional jail space to house contract inmates or reduce the number of posts, in this case housing units that need to be staffed. Inmates on an ankle monitor program are able to be supervised by fewer staff members than if they were housed within the facility. Inmates are also typically charged a fee to participate in the program which helps to off-set the programming costs.

External Transports -- There is a significant portion of overtime dollars that are currently being expended for external transport runs of inmates to various appointments, off-site court appearances, warrant pickups and IDOC shipments. Although a portion of I.C.E. related transports is reimbursed, there appears to be opportunities for cost savings by working with neighboring counties. This process has already begun and should continue to be encouraged and pursued.

Shift Minimums – Many of the procedures regarding granting time off are part of the current labor agreement, there are some opportunities to increase the number of staff in the building and in turn reduce the amount of overtime necessary to fill vacancies. If information regarding transports, special details and staff absences can be obtained in a timely and accurate manner, supervisors can pre-plan for these activities on their schedules which then create exceptions to the shift minimums. This is currently an area that is being stressed to supervisors and more should be done to assist them in keeping up with this task.

Supervisors – According to the staffing coverage plan, there appears to be the correct number of Sergeants in place based on the current scenario. There is however an opportunity to change from the traditional Sergeant minimum to a Supervisor minimum. By lessening the burden of the administrative functions that a Shift Lieutenant is responsible for, it would free them up to do what they were intended to, run their shift and cover the Operations as needed when Sergeants were away on days off, benefit time or absence. Options would be to look at bringing back the Deputy Chief position in Corrections. This would allow for some needed separation between the Chief of Corrections and the Corrections Lieutenants as well as

18

mitigating the burden that the current Lieutenants have in being regularly adjusted to handle administrative functions.

Block 6 – Block 6 is a 17-cell double bunked housing unit that is currently being brought back to operational status after having been used for other purposes during the latest construction/renovation projects at the jail. There are a number of factors that will dictate staffing levels for this unit. The most significant factor is the lack of electronic locking mechanisms and cell doors that must be manually keyed open and keyed lock. Additionally, the showers in Block 6 are fairly isolated and will require a Correctional Officer inside the unit while the showers are available to the inmates. None of these factors will preclude the use of Block 6, however they will require a minimum of two posts on each of the Day and Afternoon shift and one post on the Night shift. Based on the current SRF of 2.04, this means that it would require the equivalent of 10.25 Correctional Officers to staff the unit on a 24/7 basis. In lieu of adding additional staff, one could expect to spend the equivalent of that in overtime dollars. An additional 34 contract beds have the maximum potential of $1,054,850/year in revenue which would certainly appear to offset either the overtime or additional hires.

The manual locks in Block 6 will also dictate the classification of inmate housed in there as well. Inmate workers and county sentenced inmates would provide the least risk to staff in that type of environment.

19

# McHenry County Corrections
## Housing Capacities 2019

| | Housing Area | Gender | Classification | Single Cell Capacity | Double Cell Capacity | Dorm Capacity | Rated Capacity | Operational Capacity | Comments |
|---|---|---|---|---|---|---|---|---|---|
| Booking | Booking 100 | M | Group Holding | | | | N/A | N/A | |
| | Booking 101 | M | Group Holding | | | | N/A | N/A | |
| | Booking 102 | M | Transitional | 1 | | | N/A | N/A | |
| | Booking 103 | M | Transitional | 1 | | | N/A | N/A | |
| | Booking 104 | M | Transitional | | 2 | | N/A | N/A | |
| | Booking 105 | M | Transitional | | 4 | | N/A | N/A | |
| | Booking 106 | M | Transitional | | 2 | | N/A | N/A | |
| | Booking 107 | M | Isolation | 1 | | | N/A | N/A | |
| | Booking 207 | M | Isolation | 1 | | | N/A | N/A | |
| | Booking 201 | F | Group Holding | | | | N/A | N/A | |
| | Booking 202 | F | Transitional | 1 | | | N/A | N/A | |
| | Booking 203 | F | Transitional | 1 | | | N/A | N/A | |
| | Booking 204 | F | Transitional | 1 | | | N/A | N/A | |
| | Booking 205 | F | Transitional | 1 | | | N/A | N/A | |
| | Booking 206 | F | Group Holding | | | | N/A | N/A | |
| Block 2 | Section 2-1 | M | General Pop | | 32 | | 32 | 32 | |
| | Section 2-2 | M | General Pop | | 32 | | 32 | 32 | |
| | Section 2-3 | M | ICE L/ML | | 32 | | 32 | 32 | |
| | Section 2-4 | M | General Pop | | 32 | | 32 | 32 | |
| | Section 2-5 | M | Sentenced | | 18 | | 18 | 18 | |
| | Section 2-6 | F | Segregation | 6 | | | 6 | 6 | |
| Block 3 | Section 3-1 | F | ICE L/ML | | 32 | | 32 | 32 | |
| | Section 3-2 | F | General Pop | | 32 | | 32 | 32 | |
| | Section 3-3 | M | General Pop | | 32 | | 32 | 32 | |
| | Section 3-4 | M | General Pop | | 32 | | 32 | 32 | |
| | Section 3-5 | M | Inmate Worker | | 20 | | 20 | 20 | |
| | Section 3-6 | M | Special Needs | | 12 | | 12 | 12 | |
| Block 4 | Section 4-1 | M | ICE L/ML | | 64 | | 64 | 64 | |
| | Section 4-2 | M | ICE MH/H | | 64 | | 64 | 64 | |
| | Section 4-3 | M | Segregation | 12 | | | 12 | 12 | Double bunk but use single |
| | Section 4-4 | M/F | Segregation | 4 | | | 4 | 4 | Double bunk but use single |
| Block 5 | Section 5-1 | M | ICE L/ML | | 64 | | 64 | 64 | |
| | Section 5-2 | M | ICE MH/H | | 64 | | 64 | 64 | |
| | Section 5-3 | M/F | Medical | | 8 | | 8 | 8 | |
| | Section 5-4 | M | Medical | | 24 | | 24 | 24 | |
| | E-Pod | M/F | non-operational | | 34 | | 34 | 0 | |
| | | | | | | | | | |
| | Block 2 Overflow | M | | | | 25 | | | Temporary Overflow |
| | Block 3 Overflow | M | | | | 25 | | | Temporary Overflow |
| | | | | | | | | | |
| | | | | | | | 650 | 616 | |

A-1

# Position Classification Factors – 2018
## Corrections Officers (5/2 - 5/3 - 8 hour rotation)

| | | |
|---|---|---|
| Number of Days per year agency closed | | 0.00 |
| Number of Days per year agency opened | | 365.00 |
| Average number of regular days off per employee per year | 122.50 | |
| Average number of vacation days taken per employee per year | 16.15 | |
| Average number of comp days taken per employee per year | 5.77 | |
| Average number of sick days taken per employee per year | 5.26 | |
| Average number of FMLA - Sick days taken per employee per year | 1.98 | |
| Average number of FMLA - Vacation days taken per employee per year | 0.40 | |
| Average number of FMLA - Comp days taken per employee per year | 0.69 | |
| Average number of FMLA - No Pay days taken per employee per year | 0.03 | |
| Average number of personal days taken per employee per year | 2.75 | |
| Average number of disciplinary days taken per employee per year | 0.21 | |
| Average number of training days taken per employee per year | 2.00 | |
| Average number of military days taken per employee per year | 1.27 | |
| Average number of funeral days taken per employee per year | 0.44 | |
| Average number of injury days taken per employee per year | 1.03 | |
| Average number of jury duty days taken per employee per year | 0.01 | |
| Total number of days unavailable per employee per year | | 160.49 |
| Average number of work days per employee per year w/out break factor | | 204.51 |
| Lunches and break factors (60 min / 480 min workday) | | 25.56 |
| Average number of work days per employee per year with break factor | | 178.95 |
| Shift Relief factor [SRF] w/ Breaks (7 day position) [Y/Y] | | 2.04 |
| Shift Relief factor [SRF] w/out Breaks (7 day position) [Y/N] | | 1.78 |
| Shift Relief factor [SRF] w/out Breaks (5 day position) [Y/N] | | 1.27 |

A-2

## Employee Transactions & Totals

| | | | | |
|---|---|---|---|---|
| | | Data Up to Date: | 3/19/2019 2:35 PM | |
| Time Period: | 1/01/2018 - 12/31/2018 | Executed on: | 3/19/2019 2:36 PM | |
| Query: | Previously Selected Employee(s) | Printed for: | 3043 | |
| Pay Codes: | (115): \|22nd Circuit\|5253\|Bereavement - No OT\|Bereavement 2 - No OT\|Bereavement 3 - No OT\|Bereavement Wknd Day - No OT\|... | | | |
| Actual/Adjusted: | Show hours credited to this period only. | | | |

| Employee: | Yearton, Benitta J | ID: 3738 | | |
|---|---|---:|---:|---:|
| | Overtime | 68.50 | $0.00 | 0.00 |
| | Personal | 8.00 | $0.00 | 0.00 |
| | Personal - FMLA | 16.00 | $0.00 | 0.00 |
| | Regular | 1,526.75 | $0.00 | 0.00 |
| | Schedule Adjust | 40.00 | $0.00 | 0.00 |
| | Sick No OT - FMLA | 192.00 | $0.00 | 0.00 |
| | Vacation | 112.00 | $0.00 | 0.00 |
| | Vacation - FMLA | 48.00 | $0.00 | 0.00 |
| | Totals: | 2,318.50 | $0.00 | 0.00 |

| Summary Totals: | Hours | Money | Days |
|---|---:|---:|---:|
| 5253 | 16,744.00 | $0.00 | 0.00 |
| Bereavement - No OT | 480.00 | $0.00 | 0.00 |
| Comp Earn | 9,139.38 | $0.00 | 0.00 |
| Comp Earn OT | 2,271.50 | $0.00 | 0.00 |
| Comp Payout | 5,621.66 | $0.00 | 0.00 |
| Comp Taken | 6,333.75 | $0.00 | 0.00 |
| Comp Taken - FMLA | 757.37 | $0.00 | 0.00 |
| Double Time | 159.75 | $0.00 | 0.00 |
| Floating Holiday No OT | 1,032.00 | $0.00 | 0.00 |
| Holiday No OT | 4,266.75 | $0.00 | 0.00 |
| Jury Duty - no OT | 16.00 | $0.00 | 0.00 |
| Military AT - no OT | 80.00 | $0.00 | 0.00 |

## Employee Transactions & Totals

| | | | | |
|---|---|---|---|---|
| Time Period: | 1/01/2018 - 12/31/2018 | | Executed on: | 3/19/2019 2:36 PM |
| Query: | Previously Selected Employee(s) | | Printed for: | 3043 |
| Pay Codes: | (115): \|22nd Circuit\|5253\|Bereavement - No OT\|Bereavement 2 - No OT\|Bereavement 3 - No OT\|Bereavement Wknd Day - No OT\|... | | | |
| Actual/Adjusted: | Show hours credited to this period only. | | | |

| | | | |
|---|---|---|---|
| Military Paid - no OT | 1,016.00 | $0.00 | 0.00 |
| Military Unpaid | 296.00 | $0.00 | 0.00 |
| No Pay - Admin Leave | 56.00 | $0.00 | 0.00 |
| No Pay - FMLA | 37.88 | $0.00 | 0.00 |
| No Pay - Unpaid | 178.00 | $0.00 | 0.00 |
| Overtime | 11,623.67 | $0.00 | 0.00 |
| Paid Admin Leave | 96.00 | $0.00 | 0.00 |
| Personal | 3,000.00 | $0.00 | 0.00 |
| Personal - FMLA | 16.00 | $0.00 | 0.00 |
| Regular | 202,696.70 | $0.00 | 0.00 |
| Schedule Adjust | 7,424.00 | $0.00 | 0.00 |
| Sick No OT | 5,766.50 | $0.00 | 0.00 |
| Sick No OT - FMLA | 2,175.00 | $0.00 | 0.00 |
| Vacation | 17,700.75 | $0.00 | 0.00 |
| Vacation - FMLA | 439.00 | $0.00 | 0.00 |
| Vacation Payout | 757.18 | $0.00 | 0.00 |
| WC TTD | 1,136.00 | $0.00 | 0.00 |
| Grand Totals: | 301,316.90 | $0.00 | 0.00 |

Total Number of Employees: 137

# Position Classification Factors – 2018
## Corrections Officers (Fixed 5-day)

| | | |
|---|---:|---:|
| Number of Days per year agency closed | | 104.00 |
| Number of Days per year agency opened | | 261.00 |
| Average number of regular days off per employee per year | 104.00 | |
| Average number of vacation days taken per employee per year | 20.71 | |
| Average number of comp days taken per employee per year | 2.35 | |
| Average number of sick days taken per employee per year | 5.19 | |
| Average number of FMLA - Sick days taken per employee per year | 5.50 | |
| Average number of FMLA - Vacation days taken per employee per year | 0.00 | |
| Average number of FMLA - Comp days taken per employee per year | 0.00 | |
| Average number of FMLA - No Pay days taken per employee per year | 0.00 | |
| Average number of personal days taken per employee per year | 3.00 | |
| Average number of disciplinary days taken per employee per year | 0.00 | |
| Average number of training days taken per employee per year | 2.00 | |
| Average number of military days taken per employee per year | 0.00 | |
| Average number of funeral days taken per employee per year | 0.00 | |
| Average number of injury days taken per employee per year | 0.00 | |
| Average number of jury duty days taken per employee per year | 0.00 | |
| Total number of days unavailable per employee per year | | 142.75 |
| Average number of work days per employee per year w/out break factor | | 118.25 |
| Lunches and break factors (60 min / 480 min workday) | | 14.78 |
| Average number of work days per employee per year with break factor | | 103.47 |
| Shift Relief factor [SRF] w/ Breaks (5 day position) **[Y/Y]** | | **2.52** |
| Shift Relief factor [SRF] w/out Breaks (5 day position) **[Y/N]** | | **2.21** |

A-3

## Employee Transactions & Totals

| | | | Executed on: | 3/19/2019 4:16 PM |
|---|---|---|---|---|
| Time Period: | 1/01/2018 - 12/31/2018 | | | |
| Query: | Previously Selected Employee(s) | | Printed for: | 3043 |
| Pay Codes: | (115): |22nd Circuit|5253|Bereavement - No OT|Bereavement 2 - No OT|Bereavement 3 - No OT|Bereavement Wknd Day - No OT|... | | | |
| Actual/Adjusted: | Show hours credited to this period only. | | | |

| Summary Totals: | Hours | Money | Days |
|---|---|---|---|
| Comp Earn | 903.75 | $0.00 | 0.00 |
| Comp Earn OT | 167.50 | $0.00 | 0.00 |
| Comp Payout | 794.75 | $0.00 | 0.00 |
| Comp Taken | 337.92 | $0.00 | 0.00 |
| Double Time | 5.25 | $0.00 | 0.00 |
| Floating Holiday No OT | 144.00 | $0.00 | 0.00 |
| Holiday No OT | 1,720.00 | $0.00 | 0.00 |
| Overtime | 837.75 | $0.00 | 0.00 |
| Personal | 432.00 | $0.00 | 0.00 |
| Regular | 30,098.25 | $0.00 | 0.00 |
| Schedule Adjust | 437.00 | $0.00 | 0.00 |
| Sick No OT | 747.25 | $0.00 | 0.00 |
| Sick No OT - FMLA | 792.00 | $0.00 | 0.00 |
| Vacation | 2,983.50 | $0.00 | 0.00 |
| Vacation Payout | 7.83 | $0.00 | 0.00 |
| Grand Totals: | 40,408.75 | $0.00 | 0.00 |

Total Number of Employees: 18

# Position Classification Factors - 2018
## Corrections Sergeants (5/2 - 5/3 - 8 hour rotation)

| | | |
|---|---:|---:|
| Number of Days per year agency closed | | 0.00 |
| Number of Days per year agency opened | | 365.00 |
| Average number of regular days off per employee per year | 122.50 | |
| Average number of vacation days taken per employee per year | 21.18 | |
| Average number of comp days taken per employee per year | 10.25 | |
| Average number of sick days taken per employee per year | 4.70 | |
| Average number of FMLA - Sick days taken per employee per year | 1.84 | |
| Average number of FMLA - Vacation days taken per employee per year | 0.09 | |
| Average number of FMLA - Comp days taken per employee per year | 0.00 | |
| Average number of FMLA - No Pay days taken per employee per year | 0.00 | |
| Average number of personal days taken per employee per year | 3.00 | |
| Average number of disciplinary days taken per employee per year | 0.00 | |
| Average number of training days taken per employee per year | 2.00 | |
| Average number of military days taken per employee per year | 3.45 | |
| Average number of funeral days taken per employee per year | 0.81 | |
| Average number of injury days taken per employee per year | 0.00 | |
| Average number of jury duty days taken per employee per year | 0.00 | |
| Total number of days unavailable per employee per year | | 169.82 |
| Average number of work days per employee per year w/out break factor | | 195.18 |
| Lunches and break factors (60 min / 480 min workday) | | 24.40 |
| Average number of work days per employee per year with break factor | | 170.78 |
| Shift Relief factor [SRF] w/ Breaks (7 day position) **[Y/Y]** | | 2.14 |
| | | |
| Shift Relief factor [SRF] w/out Breaks (7 day position) **[Y/N]** | | 1.87 |

## Employee Transactions & Totals

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Time Period: | 1/01/2018 - 12/31/2018 | | | | | Executed on: | 3/19/2019 5:08 PM | |
| Query: | Previously Selected Employee(s) | | | | | Printed for: | 3043 | |
| Pay Codes: | (115): \|22nd Circuit\|5253\|Bereavement - No OT\|Bereavement 2 - No OT\|Bereavement 3 - No OT\|Bereavement Wknd Day - No OT\|... | | | | | | | |
| Actual/Adjusted: | Show hours credited to this period only. | | | | | | | |

| | | | |
|---|---|---|---|
| Bereavement - No OT | 72.00 | $0.00 | 0.00 |
| Comp Earn | 734.25 | $0.00 | 0.00 |
| Comp Earn OT | 184.50 | $0.00 | 0.00 |
| Comp Payout | 48.00 | $0.00 | 0.00 |
| Comp Taken | 901.75 | $0.00 | 0.00 |
| Double Time | 1.50 | $0.00 | 0.00 |
| Floating Holiday No OT | 88.00 | $0.00 | 0.00 |
| Holiday No OT | 372.00 | $0.00 | 0.00 |
| Military AT - no OT | 80.00 | $0.00 | 0.00 |
| Military Paid - no OT | 176.00 | $0.00 | 0.00 |
| Military Unpaid | 48.00 | $0.00 | 0.00 |
| No Pay - Unpaid | 1.00 | $0.00 | 0.00 |
| Overtime | 134.50 | $0.00 | 0.00 |
| Personal | 264.00 | $0.00 | 0.00 |
| Regular | 16,879.75 | $0.00 | 0.00 |
| Schedule Adjust | 623.50 | $0.00 | 0.00 |
| Sick No OT | 414.25 | $0.00 | 0.00 |
| Sick No OT - FMLA | 161.50 | $0.00 | 0.00 |
| Vacation | 1,864.00 | $0.00 | 0.00 |
| Vacation - FMLA | 8.00 | $0.00 | 0.00 |
| Grand Totals: | 24,304.50 | $0.00 | 0.00 |

Total Number of Employees: 11

# McHenry County Corrections Staff Analysis Coverage Plan 2019

| Post/Position | Notes | Rank | 1st | Shift 2nd | 3rd | Flex | Total Posts | Away Relief | Break Relief | # Days | SRF | Total Staff | Rounded | 1st | 2nd | 3rd | Flex |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Supervisory Staff (Sergeants)** | | | | | | | | | | | | | | | | | |
| Shift Sergeant | | SGT | 3 | 2 | 2 | 0 | 7 | Y | N | 7 | 1.87 | 13.09 | 13 | 5.61 | 3.74 | 3.74 | 0.00 |
| Support Sergeant | | SGT | 0 | 0 | 0 | 5 | 5 | N | N | 5 | 1.00 | 5.00 | 5 | 0.00 | 0.00 | 0.00 | 5.00 |
| **Supervisory Subtotal** | | | 3 | 2 | 2 | 5 | 12 | | | | | 13.09 | 13 | 5.61 | 3.74 | 3.74 | 5.00 |
| **Support Staff** | | | | | | | | | | | | | | | | | |
| Classification | | CO | 0 | 0 | 0 | 2 | 2 | N | N | 5 | 1.00 | 2.00 | 2 | 0.00 | 0.00 | 0.00 | 2.00 |
| Programs | | CO | 0 | 0 | 0 | 2 | 2 | N | N | 5 | 1.00 | 2.00 | 2 | 0.00 | 0.00 | 0.00 | 2.00 |
| Training | | CO | 0 | 0 | 0 | 3 | 3 | N | N | 5 | 1.00 | 3.00 | 3 | 0.00 | 0.00 | 0.00 | 3.00 |
| Road Crew | | CO | 0 | 0 | 0 | 1 | 1 | N | N | 5 | 1.00 | 1.00 | 1 | 0.00 | 0.00 | 0.00 | 1.00 |
| **Support Subtotal** | | | 0 | 0 | 0 | 8 | 8 | | | | | 8.00 | 8 | 0.00 | 0.00 | 0.00 | 8.00 |
| **Jail Operations Staff** | | | | | | | | | | | | | | | | | |
| Booking Officer | Relief | CO | 3 | 3 | 3 | 0 | 9 | Y | Y | 7 | 2.04 | 18.36 | 18 | 6.12 | 6.12 | 6.12 | 0.00 |
| Booking Officer | No Relief | CO | 1 | 1 | 1 | 0 | 3 | Y | N | 7 | 1.78 | 5.34 | 5 | 1.78 | 1.78 | 1.78 | 0.00 |
| Property | | CO | 0 | 0 | 0 | 2 | 2 | Y | N | 5 | 2.21 | 4.42 | 4 | 0.00 | 0.00 | 0.00 | 4.42 |
| Central Control | | CO | 1 | 1 | 1 | 0 | 3 | Y | Y | 7 | 2.04 | 6.12 | 6 | 2.04 | 2.04 | 2.04 | 0.00 |
| Court | M-F | CO | 0 | 0 | 0 | 7 | 7 | Y | N | 5 | 2.21 | 15.47 | 15 | 0.00 | 0.00 | 0.00 | 15.47 |
| Video Court | | CO | 0 | 0 | 0 | 1 | 1 | Y | N | 5 | 2.21 | 2.21 | 2 | 0.00 | 0.00 | 0.00 | 2.21 |
| Front Desk | Relief | CO | 1 | 1 | 0 | 0 | 2 | Y | Y | 7 | 2.04 | 4.08 | 4 | 2.04 | 2.04 | 0.00 | 0.00 |
| Front Desk | No Relief | CO | 1 | 1 | 0 | 0 | 2 | Y | N | 7 | 1.78 | 3.56 | 4 | 1.78 | 1.78 | 0.00 | 0.00 |
| Internal Transport | | CO | 4 | 3 | 1 | 0 | 8 | Y | N | 7 | 1.78 | 14.24 | 14 | 7.12 | 5.34 | 1.78 | 0.00 |
| Internal/External Transport | M-F | CO | 5 | 0 | 0 | 0 | 5 | Y | N | 5 | 2.21 | 11.05 | 11 | 11.05 | 0.00 | 0.00 | 0.00 |
| External Transport | | CO | 4 | 0 | 0 | 0 | 4 | Y | N | 5 | 2.21 | 8.84 | 9 | 8.84 | 0.00 | 0.00 | 0.00 |
| I.C.E. Transport | | CO | 0 | 0 | 0 | 5 | 5 | Y | N | 5 | 2.21 | 11.05 | 11 | 0.00 | 0.00 | 0.00 | 11.05 |
| Mail | M-F | CO | 0 | 0 | 0 | 1 | 1 | Y | N | 5 | 2.21 | 2.21 | 2 | 0.00 | 0.00 | 0.00 | 2.21 |
| **Operations Subtotal** | | | 20 | 10 | 6 | 16 | 51 | | | | | 104.74 | 103 | 40.77 | 19.10 | 11.72 | 33.15 |
| **Jail Custody Staff** | | | | | | | | | | | | | | | | | |
| Control 2-1 | | CO | 1 | 1 | 1 | 0 | 3 | Y | N | 7 | 1.78 | 5.34 | 5 | 1.78 | 1.78 | 1.78 | 0.00 |
| Control 2-2 | | CO | 1 | 1 | 1 | 0 | 3 | Y | Y | 7 | 2.04 | 6.12 | 6 | 2.04 | 2.04 | 2.04 | 0.00 |
| Control 2-3 | | CO | 1 | 1 | 0 | 0 | 2 | Y | Y | 7 | 2.04 | 4.08 | 4 | 2.04 | 2.04 | 0.00 | 0.00 |
| Control 3-1 | | CO | 1 | 1 | 1 | 0 | 3 | Y | N | 7 | 1.78 | 5.34 | 5 | 1.78 | 1.78 | 1.78 | 0.00 |
| Control 3-2 | | CO | 1 | 1 | 1 | 0 | 3 | Y | Y | 7 | 2.04 | 6.12 | 6 | 2.04 | 2.04 | 2.04 | 0.00 |
| Control 3-3 | | CO | 1 | 1 | 0 | 0 | 2 | Y | Y | 7 | 2.04 | 4.08 | 4 | 2.04 | 2.04 | 0.00 | 0.00 |
| Section 4-1 | | CO | 1 | 1 | 0 | 0 | 2 | Y | Y | 7 | 2.04 | 4.08 | 4 | 2.04 | 2.04 | 0.00 | 0.00 |
| Section 4-2 | | CO | 1 | 1 | 0 | 0 | 2 | Y | Y | 7 | 2.04 | 4.08 | 4 | 2.04 | 2.04 | 0.00 | 0.00 |
| Control 4-1 | | CO | 1 | 1 | 1 | 0 | 3 | Y | Y | 7 | 2.04 | 6.12 | 6 | 2.04 | 2.04 | 2.04 | 0.00 |
| Control 4-2 | | CO | 1 | 1 | 0 | 0 | 2 | Y | Y | 7 | 2.04 | 4.08 | 4 | 2.04 | 2.04 | 0.00 | 0.00 |
| Control 4-3 | | CO | 0 | 0 | 0 | 0 | 0 | Y | N | 7 | 1.78 | 0.00 | 0 | 0.00 | 0.00 | 0.00 | 0.00 |
| Section 5-1 | | CO | 1 | 1 | 0 | 0 | 2 | Y | Y | 7 | 2.04 | 4.08 | 4 | 2.04 | 2.04 | 0.00 | 0.00 |
| Section 5-2 | | CO | 1 | 1 | 0 | 0 | 2 | Y | Y | 7 | 2.04 | 4.08 | 4 | 2.04 | 2.04 | 0.00 | 0.00 |
| Control 5-1 | | CO | 1 | 1 | 1 | 0 | 3 | Y | Y | 7 | 2.04 | 6.12 | 6 | 2.04 | 2.04 | 2.04 | 0.00 |
| Control 5-2 | | CO | 1 | 1 | 0 | 0 | 2 | Y | Y | 7 | 2.04 | 4.08 | 4 | 2.04 | 2.04 | 0.00 | 0.00 |
| Control 5-3 | | CO | 0 | 0 | 0 | 0 | 0 | Y | N | 7 | 1.78 | 0.00 | 0 | 0.00 | 0.00 | 0.00 | 0.00 |
| Block 6 | N/A | CO | 0 | 0 | 0 | 0 | 0 | Y | Y | 7 | 0.00 | 0.00 | 0 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Custody Subtotal** | | | 14 | 14 | 6 | 0 | 34 | | | | | 67.80 | 66 | 28.04 | 28.04 | 11.72 | 0.00 |
| **Total Officers Needed** | | | | | | | | | | | | 180.54 | 177 | 68.81 (42%) | 47.14 (36%) | 23.44 (22%) | 41.15 |
| **Total Officers Current** | | | | | | | | | | | | | 147 | 62 | 45 | 24 | 16 |
| **Total Supervisors Needed** | | | | | | | | | | | | 13.09 | 13 | 5.61 | 3.74 | 3.74 | 5.00 |
| **Total Supervisors Current** | | | | | | | | | | | | | 16 | 5 | 3 | 3 | 5 |

*Note: Jail Custody Staff rows are grouped as Block 2 (Control 2-1 to 2-3), Block 3 (Control 3-1 to Section 4-1), Block 4 (Section 4-2 to Control 4-3), Block 5 (Section 5-1 to Block 6).*