IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MCHENRY COUNTY and KANKAKEE COUNTY, bodies politic and corporate,<br><br>Plaintiffs,<br><br>v.<br><br>KWAME RAOUL, in his official capacity as Illinois Attorney General,<br><br>Defendant. | Case No. 21 CV 50341<br><br>Judge Phillip G. Reinhard<br><br>Magistrate Judge Lisa A. Jensen |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

The Attorney General's Opposition to Plaintiff's Motion for a Preliminary Injunction (Doc # 25) ("Def's Opp."), relies, primarily, on the anti-commandeering principle set forth in the Tenth Amendment. That principle is simply inapplicable here, because the federal government, through its contracts with the plaintiffs to house immigration detainees, has not forced, nor attempted to force, plaintiffs or the State of Illinois, to do anything. Rather, Congress has granted the federal government, through the Attorney General of the United States, the authority to enter into such contracts.

**Plaintiffs are Likely to Succeed on the Merits.**

Five days after the counties filed their motion and supporting memorandum of law, the Ninth Circuit issued a decision reversing the district court's denial of a preliminary injunction against a recently-enacted California statute, AB 32, which barred private prison facilities in California from housing immigration detainees. *Geo Group v. Newsom*, 2021 U.S. App. LEXIS 29898 (9th Cir. Oct. 5, 2021). In California, the federal government relies exclusively on private detention facilities to house immigration detainees. 2021 U.S. App. Lexis 29898 at *8. AB 32

prohibited contractors from contracting with the federal government to house immigration detainees, "even though Congress allows such contracts involving the uniquely national issue of immigration detention." *Id*. at *36. The Ninth Circuit held that AB 32 was both preempted and violated the doctrine of intergovernmental immunity, reasoning as follows:

> Shorn of its creative but ultimately unconvincing arguments, California's case against preemption withers. We are left with these simple facts: The Secretary [of the Department of Homeland Security] may arrange for "appropriate" detention facilities (8U.S.C. § 1231(g); he or she has the power to contract out detention operations as "necessary and proper" (6 U.S.C. § 112(b)(2)); and the federal government has sole authority over immigration. The words used in the statute are extremely broad and permissive, and the United States has exclusive domain in this area. It is thus "clear and manifest" that the Secretary has broad power and discretion to arrange for appropriate places of detention, including the right to contract with private companies to operate detention facilities. *Wyeth* [*v. Levine*], 555 U.S. [555] at 565[ (2008)].
>
> AB 32 cannot stand because it conflicts with this federal power and discretion given to the Secretary in an area that remains in the exclusive realm of the federal government. It bars the Secretary from doing what federal immigration law explicitly permits him or her to do. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1054, 1062 (9th Cir. 2014) ("Preemption analysis must contemplate the practical result of the state law, not just the means the state utilizes to accomplish that goal." (alteration omitted)). This is a classic case of conflict preemption.

*Id*. at *34-*35. Similarly here, the Illinois Way Forward Act prohibits contracts with local governmental units to house immigration detainees, a right belonging exclusively to the federal government.

Despite the defendant's tenuous position on preemption, he relies on the recurring theme that the plaintiffs and the state are a single entity and, therefore, the plaintiffs have no authority to challenge the state's implementation of a law, even one that is unconstitutional. Conflating the identities of the counties and the state, defendant goes further, arguing that sovereign immunity applies such that the state cannot be forced to enter into such contracts. *E.g.,* Def's Opp. at 4 (Doc # 25) ("*the State*—including its subunits—will no longer enter into agreements to house

federal immigration detainees") (emphasis in original). If plaintiffs were nothing other than mere creatures, subunits, or organs of the state, how is it that, unlike the State of Illinois, counties lack sovereign immunity? *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978). If the plaintiffs and the state are merely one indistinguishable entity, any lawsuit filed against the plaintiffs would be defended by the defendant here, and any judgment against plaintiffs would be paid by the state, which is certainly not the case. If the plaintiffs and the state are undifferentiated, there would be no need for the Illinois Way Forward Act, because the counties would be unable to execute the agreements on their own behalf and the state could simply decline to enter into contracts with the federal government to house immigration detainees.

The defendant contends that because the counties are merely political subdivisions of the state, the principles of federalism prohibit the counties from exercising the "power to veto the Way Forward Act through litigation." Def's Opp. at 3 (Doc # 25). Contrary to this assertion, there is no Supreme Court precedent prohibiting local governments from bringing claims arising under the Supremacy Clause, which necessarily implies a challenge to a state statute on the grounds of preemption. Although political subdivisions are barred from bringing claims against the parent state under the Fourteenth Amendment and Contracts Clause,[1] in *Gomillion v. Lightgoot*, the Court clearly contemplated political subdivisions having standing to bring claims under other provisions of the Constitution, stating:

> Thus, a correct reading of the seemingly unconfined dicta of *Hunter* and kindred cases is not that the State has plenary power to manipulate in every conceivable way, for every conceivable purpose, the affairs of its municipal corporations, but rather that the State's authority is unrestrained by the particular prohibitions of the Constitution considered in those cases.

*Gomillion v. Lightfoot*, 364 U.S. 339, 344 (1960). Specifically, as here, political subdivisions are

---

[1] See *Hunter v. Pittsburgh,* 207 U.S. 161 (1907); *Trenton v. New Jersey*, 262 U.S. 182 (1923).

not barred from bringing an action where the state has exerted its power in a way which is unconstitutional. "When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Id.* at 347.

  The authority for the agreements in question arises from federal law and the subject matter of the agreements is exclusively within the scope of federal jurisdiction. The Illinois Way Forward Act seeks to circumvent the federal government's constitutional power in the field of immigration detention. While the state contends that allowing the counties to challenge the Illinois Way Forward Act is an impermissible attack on its sovereignty, an action under the Supremacy Clause is the only mechanism for determining the extent of that sovereignty and should therefore be allowed regardless of the claimant. Indeed, the defendant's "we are one" argument is merely a convoluted and confused legal standing argument; a mere projection designed to prevent the Court from ruling on the substantive issue—preemption and the limits of the state's power.

  The defendant's argument that the plaintiff's contracts are barred by the Tenth Amendment is simply wrong. As noted, the federal government is not forcing the plaintiffs to contract with it. These contracts are the result of mundane and commonplace negotiations between governmental entities, two counties and the federal government. With particular regard to the contracts at issue here, the counties have the express power to enter into intergovernmental agreements with other public agencies, including the federal government. 5 ILCS 220/3, 220/5.

  The two cases cited by the defendant do not support his argument. Defendant cites *Printz v. United States*, 521 U.S. 898 (1997), Def's Opp. at 4, but merely stating the issue addressed by the Court demonstrates that case's inapplicability. "The question presented in these cases is

whether certain interim provisions of the Brady Handgun Violence Prevention Act, . . . *commanding* state and local law enforcement officers to conduct background checks on prospective handgun purchasers and to perform certain related tasks, violate the Constitution." 521 U.S. at 902 (emphasis added; citation omitted). Here, by contrast, nothing in the federal laws relating to housing immigration detainees commands any local governmental unit to do anything. It merely authorizes the Attorney General to enter into contracts with willing partners.

The other case cited by defendant is ever further afield. The issue in *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir.), vacated in part on other grounds 2018 U.S. LEXIS 21801 (2018) (*en banc*), was whether the Assistant U.S. Attorney General could impose conditions on certain federal grants that were not imposed by Congress in the statute at issue. The case presented no Tenth Amendment question at all. Rather, it dealt with the separation of powers between the Congress and Executive branch of the federal government. The specific issue in the case was "whether Congress granted the Assistant Attorney General the unbounded authority to impose his or her own conditions on the release of [certain grant] funds." 888 F.3d at 283. The court held that Congress had not granted such power to the Assistant Attorney General. *Id*. at 287.

**The Federal Government has Preempted the Field of Immigration Detention.**

The defendant's argument with respect to field preemption is confusing and, when finally understood, wrong. Defendant contends that the "Counties' preemption argument would deprive the State of that right [not to participate in federal programs without its consent], yoking it to federal initiatives on the whim of its subunits." Def's Opp. at 6. As discussed above, defendant's argument discusses the counties and the state as though they are one and the same entity, which they are not. The state is free not to contract with the federal government to house immigration

detainees, but it cannot prohibit the federal government from contracting with units of local government, as it is specifically authorized to do by Congress, and doing so does not compel the state to do anything. Defendant again cites *Printz*, a case distinguished by plaintiffs above.

Defendant argues that field preemption does not apply here, because federal law allows for cooperation with and the participation of the states and local government in housing immigration detainees. Def's Opp. at 6-7 (Doc # 25). The fact that the federal government can contract for detention services with states and local governments does not mean it has not completely preempted the field of detaining and housing immigration detainees. It simply means that, by agreement, the federal government may purchase goods and services to fulfill its duties to house immigration detainees. Defendant cites no authority that holds that in order for field preemption to apply, the federal government cannot request the states or local governments for assistance.

Congress has made it clear, through statutory enactments, that the detention and housing of immigration detainees is vested exclusively in the federal government. 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States"); *id*. § 1231(g) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal"). Congress left no room for state legislation in this area, including Section 15(g) of the Illinois Way Forward Act. "Indeed, the federal government exclusively regulates immigration detention." *Geo Group*, 2021 U.S. App. LEXIS 29898 at *21.

Defendant cites *Geo Group*, for the unremarkable proposition that "the federal government cannot commandeer state and local governments into serving federal functions." Def's Opp. at 7. The Ninth Circuit reversed the district court's denial of a preliminary injunction

on two grounds, that AB 32 was preempted and that the law discriminated against the federal government, which relied exclusively on private detention centers to house immigration detainees. In language applicable to the case before this Court, the Ninth Circuit stated:

> Here, AB 32 does not just "touch" upon the area of immigration detention; it bulldozes over the federal government's ability to detain immigrants by trying to ban all the current immigration detention facilities in California.
>
> In short, AB 32 does not regulate a field which the states have traditionally occupied. To the contrary, it tries to regulate an area—detention of immigrants— that belongs exclusively in the realm of the federal government.

*Id*. at *22. See also *id*. at *9-*10 ("Immigration—in particular, the detention of undocumented immigrants and those slated for removal—falls within the core of exclusive federal powers"). Defendant's argument that Congress has not fully preempted the field of undocumented immigrant detention is without merit, and the Illinois Way Forward Act's attempt to similarly "ban all the current immigration detention facilities " in Illinois must also be preempted.

Defendant's commandeering argument is also inconsistent with the Illinois Way Forward Act itself, which provides that the Act may not be construed to prohibit any entity from sending to, or receiving from, any federal, state, or local government information concerning the immigration status of any individual as required under federal law. 5 ILCS 805/5. Apparently, defendant does not consider compelling state and local governments to report immigration status to federal authorities to be commandeering, but, rather, only voluntary agreements to house immigration detainees.

**Section 15(g) Conflicts with Federal Law and Violates Intergovernmental immunity.**

The defendant's arguments with respect to obstacle or conflict preemption fare no better. Defendant attempts to recast plaintiffs' argument that section 15(g) conflicts with 8 U.S.C. § 1231(g). Specifically, the defendant suggests that the plaintiffs are contending that the state's

decision not to enter into cooperative agreements with the federal government conflicts or obstructs federal policy. Defendant's argument is based, once again, on the theory that the counties are the same as the state. It cites no authority for this proposition and, as discussed earlier, to treat the counties as the state would lead to bizarre and absurd results. Plaintiffs have never suggested that the state cannot decline to enter into such agreements. What it cannot do is enact a statute that prohibits the federal government from entering into contracts with local governmental units to house immigration detainees when the federal government has specifically authorized itself to do so. Section 15(g), prohibiting the federal government from contracting with counties, clearly conflicts with 8 U.S.C. § 1231(g), permitting the federal government to contract with counties, and obstructs the federal government's exclusive authority over immigration detention.

A state law is invalid "if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990). The Illinois Way Forward Act directly regulates the federal government by nullifying its contracts with plaintiffs to house ICE detainees. See*, e.g., Public Utilities Comm'n of California v. United States,* 355 U.S. 534, 544-45 (1958) (striking down state law that sought to regulate shipments of government property into state); *United States v. City of Arcata,* 629 F.3d 986, 991 (9th Cir. 2010) (holding unconstitutional state law that attempted to regulate military recruiting practices directed to persons under the age of 18). Defendant attempts to argue that intergovernmental immunity does not apply because "the State has not prohibited any third party from doing anything; the State has decided that *the State*-including its subunits-will no longer enter into agreements to house federal immigration detainees." Def's Opp. at 4 (Doc # 25) This assertion is flat out wrong. Over the past three years, the State of Illinois has

systematically implemented legislation aimed at preventing the federal government, a third party, from housing immigration detainees in the State of Illinois or entering into cooperative law enforcement agreements with local agencies. See, e.g., 730 ILCS 140/1 and 5 ILCS 835/1, *et seq*.

Defendant repeatedly asserts that any action undertaken by the counties is an action taken by the state and that the state has the singular authority to make decisions about the use of law enforcement resources. In support of this argument Defendant cites *Sessions*, a case analyzing the legality of the City of Chicago's "sanctuary city" ordinance. In *Sessions*, the Seventh Circuit clearly recognized a distinction between local control and the state with regard to law enforcement decisions. "Some localities might choose to cooperate with federal immigration efforts, and others may see such cooperation as impeding the community relationships necessary to identify and solve crimes. The choice as to how to devote law enforcement resources—including whether or not to use such resources to aid in federal immigration efforts—would traditionally be one left to state and local authorities." 888 F.3d at 282.

If it were the intention of the federal government to require states to participate in the housing of immigration detainees, it would not have enumerated cooperation with any "State, territory, or political subdivision thereof," for the housing of immigration detainees. 8 U.S.C. § 1103(a)(11)(B). "It is well-established that the plain language of a statute is "the best indicator of Congress's intent," and that "'[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Fed. Nat'l Mortg. Ass'n. v. City of Chicago*, 874 F.3d 959, 962 (7th Cir. 2017), quoting *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1152 (7th Cir. 2016). The plain language of 8 U.S.C. § 1103(a)(11)(B) makes clear that the federal government intended the execution of the agreements with the counties to be independent from the state. The Illinois Way Forward Act violates the principle of intergovernmental

immunity by discriminating against the federal government in its attempt to bar the federal government and its contractors, the counties, from engaging in agreements specifically authorized by federal law and exclusively within a federal field.

**Plaintiffs Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction.**

The defendant's argument that the only harm suffered by the counties is monetary completely disregards the fact that the 11th Amendment bars the counties from recovering money damages from the State. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Edelman v. Jordan*, 415 U.S. 85 (1974). Defendant acknowledges sovereign immunity precludes the counties from recovering money damages in federal court, thereby acknowledging the double bind, but contends that the "Counties' lack of viable legal theories should not be mistaken as a lack of legal remedies." Def's Opp. at 9 (Doc # 25). In support of this red herring concept that the counties have some other remedy available in the Court of Claims, defendant cites legislative exclusions to the State's sovereign immunity that have no applicability to the State's abolition of the counties' contracts with the federal government. *Id*. at 9-10. To deny equitable relief because some of the counties' injuries are monetary, when money damages are unavailable, would lead to an absurd result.

Neither the Supreme Court nor the Seventh Circuit have opined as to whether an Eleventh Amendment bar to monetary recovery supports a finding of irreparable harm. Various Federal Circuits have found that the traditional standard that monetary damages alone does not apply in cases where the defendant enjoys sovereign immunity. See *United States v. State of New York*, 708 F.2d 92, 93-94 (2d Cir. 1983) *Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Soc. & Rehab. Serv.*, 31 F.3d 1536, 1543 (10th Cir. 1994); *Temple Univ. v. White*, 941 F.2d 201, 215 (3d Cir. 1991). Defendant cites a slew of D.C. Circuit cases examining the irreparable harm

analysis in cases against the federal government, which also enjoys sovereign immunity. To the extent any of these cases are applicable, the standard articulated, that the harm must be "certain and great, actual and not theoretical" is met in this case. *Nat'l Mining Ass'n v. Jackson*, 768 F.Supp.2d 34, 52-53 (D.D.C. 2011).

    The monetary losses suffered by the counties are not analogous to cases which involve lost profits by private businesses. The revenue generated by the contracts offsets property taxes to pay for government services. The ability to replace lost income from the contracts by increasing property taxes is not limitless as property tax levy extensions are capped by the state legislature. 35 ILCS 200/18. The harm suffered by increased property taxes or reduced services is not born by the county as an organization. Instead, it is a direct harm to the citizens of the county who must either pay more in taxes or receive lower levels of service from county government. Applying the standard applicable to private businesses, which would require losses significant enough to destroy the enterprise, to the counties would diminish the complexity of the public harm caused to citizens by the loss of revenue associated with the contracts.

    The defendant attempts to cast doubt on the certainty of the counties' injury by theorizing that the money could be made up by continuing to house U.S. Marshal detainees. This argument is pure speculation and, in any case, is irrelevant to the issue before this Court, namely, whether the counties will suffer irreparable harm as a result of being forced to terminate their contracts to house immigration detainees.[2]

    Defendant is exhaustive in his discussion of the counties' monetary injury while neglecting other important components of irreparable harm including the constitutional violation

---

[2] Defendant attempts to cast doubt on the statements contained in the affidavits submitted by plaintiffs. Def's Opp. at 11 (Doc # 25). However, defendant failed to submit any affidavits to support his speculative comments. Accordingly, the statements contained in plaintiffs' affidavits must be taken as true. *Meese v. Keene,* 481 U.S. 465, 474 (1987) (statements contained in uncontradicted affidavits taken as true).

suffered by the counties and the imperative that the counties comply with an unconstitutional law. When, as here, there is an alleged constitutional harm, most courts hold that no further showing of irreparable harm is necessary. *E.g., Newsom*, 2021 U.S. App. LEXIS 29898 at *23; *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("'[a]lthough a plaintiff seeking equitable relief must show a threat of substantial and immediate irreparable injury, a prospective violation of a constitutional right constitutes irreparable injury for these purposes'"), quoting *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998) (internal citation omitted). Additionally, defendant fails to address the cost of organizational changes associated with decreasing each county facility's headcount significantly and the value of the lost cooperative relationship between the counties and the federal government.

**The Balance of Equities Favors the Plaintiffs.**

There is no doubt that the state's primary objective with the Illinois Way Forward Act is to make the political statement of its disapproval of federal immigration policy and the means by which it is realized. Importantly, there are no allegations that the quality or safety at the counties' facilities are detrimental to those housed there. The harm, according to the defendant, is in the perception of there being any ICE detention in Illinois. Defendant cites a study finding that "40% of Latinx parents—including those with legal status—told their children to avoid police, medical care, and other public services," Def's Opp. at 9 (Doc # 25), but provides no support for the belief that enforcement of Section 15(g) will play any significant part in affecting that statistic. There is no reason to believe that the Illinois Way Forward Act will reduce the number of illegal immigrants living in Illinois from being apprehended and detained by ICE, only that they will be housed far from their families and legal counsel. The more impactful sections of the Illinois Trust Act and Way Forward Act concerning law enforcement's role in participating with ICE on

12

things like raids, checking immigrant status, and conversion of detainees will remain in force even if the preliminary injunction is entered.

When looking at the equity of the preliminary injunction only through the lens of how it affects the immigrant community, the balance tips for the plaintiffs, because the enforcement of section 15(g) will have a real, profound, and immediate effect on those currently housed in McHenry and Kankakee Counties. When Pulaski County, the only other Illinois County with a detention agreement, decided to end its contract earlier this year, the vast majority of ICE detainees were transferred to other facilities, not released. See "Pulaski County ends ICE Contract," published in the Southern Illinoisan Aug. 25, 2021, updated Sept. 30, 2021, available at https://thesouthern.com/news/local/activists-call-for-release-of-detainees-as-pulaski-county-detention-center-ends-ice-contract/article_a21e55ae-ad28-5b6f-98b3-1fa9d5346d50.html (last visited Oct. 21, 2021). What occurred in Pulaski County foreshadows what will happen in McHenry and Kankakee Counties as well, except now there will be no facilities in Illinois for detainees to be transferred to. Instead, they will be transferred out of state, away from their families and legal teams.

The balance also favors the plaintiffs when analyzing the different impacts on the state and the counties. The counties' contracts are an act of local government control, county boards making decisions about what is best for their residents. While the State of Illinois struggles with fiscal responsibility, the counties have chosen to engage in a partnership, authorized by federal law, which allows the counties to provide services to its residents without increasing their property tax burden. The defendant argues that the damage to its sovereignty outweighs the harms to the counties. If a preliminary injunction is not entered before this Court has decided whether that state sovereignty can override federal law, the relationship between the counties and

federal government for ICE detention will be over and may never be re-established, detainees may be further separated from their families and legal teams, county taxpayers will face a greater financial burden, and jobs will be lost. When comparing these threatened harms to the delay in implementing a small portion of a state law, the balance of the equities clearly favors the plaintiffs. *Newsom*, 2021 App. LEXIS 29898 at *42 ("A party 'does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough'"), quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923).

Finally, defendant does not respond to plaintiff's request that the preliminary injunction be issued without bond, apparently conceding the point.

## Conclusion

For all the reasons contained herein and in plaintiff's opening memorandum. Plaintiff's request this Court to enter a preliminary injunction, without bond, enjoining the defendant from enforcing section 15(g) of the Illinois Way Forward Act against plaintiffs pending a trial on the merits.

McHenry County, Illinois and
Kankakee County, Illinois


By: /s/ George M. Hoffman
One of their attorneys

Patrick D. Kenneally (ARDC No. 6286573)
McHenry County State's Attorney
George M. Hoffman (ARDC No. 6180738)
Jana Blake Dickson (ARDC No. 6305741)
Assistant State's Attorneys
McHenry County Government Center
2200 North Seminary Avenue
Woodstock, Illinois 60098
815-334-4159 (phone)
815-334-0872 (fax)
gmhoffman@mchenrycountyil.gov
jeblake@mchenrycountyil.gov

## CERTIFICATE OF SERVICE

      The undersigned attorney hereby certifies that a copy of **Plaintiffs' Reply in Support of Motion for a Preliminary Injunction** was served on

Christopher G. Wells
Kathryn Hunt Muse
Alex Hemmer
Eileen Boyle Perich
Office of the Illinois Attorney General
100 W. Randolph St.
Chicago, IL 60601

by electronic filing via the ECF system, before the hour of 4:00 p.m., on October 22, 2021.

                                                                               /s/ George M. Hoffman