IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

MCHENRY COUNTY and KANKAKEE )
COUNTY, bodies politic and corporate, )
                                                                   )
                Plaintiffs, )
) Case No. 21 CV 50341
v. )
) Judge Phillip G. Reinhard
KWAME RAOUL, in his official capacity )
as Illinois Attorney General, ) Magistrate Judge Lisa A. Jensen
)
                Defendant. )

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**

Defendant's motion to dismiss (Doc # 23) and supporting memorandum of law (Doc. #24 ("MTD Mem.")) rehash the same arguments he made in his response to plaintiffs' motion for a preliminary injunction and are equally unpersuasive. Once again, the defendant relies on the anti-commandeering provision of the Tenth Amendment, which, as demonstrated in the plaintiffs' reply memorandum of law in support of motion for a preliminary injunction (Doc # 31), is inapplicable.

Nothing in the federal statutes relied on by plaintiffs, including 8 U.S.C. §§ 1103(a)(11)(B) and 1231(g), compel the state or units of local government to do anything. Defendant is just plain wrong when he states that "[t]he Counties' contention that federal immigration law *requires* state and local governments to house detainees for the federal government ignores the anti-commandeering principle embodied in the Tenth Amendment."[1] MTD Mem. at 1 (emphasis in original). Not surprisingly, defendant fails to cite any allegation in the Plaintiffs' Amended Complaint to support his statement. Moreover, defendant apparently

---

[1] The Amended Complaint asserts no "contentions;" it makes allegations. Clearly, defendant is using his motion to dismiss to further argue against plaintiffs' motion for a preliminary injunction.

misunderstands the anti-commandeering principle. If the federal statutes plaintiffs rely on required state and local governments to house federal detainees, most likely such statutes would violate the Tenth Amendment. But there is no such imperative, and the defendant's continued mischaracterization of the plaintiffs' Amended Complaint seems to betray an underlying insecurity with confronting the plaintiffs' position as pled.

Rather, the federal scheme provides for cooperation between the federal government and the state or units of local government to house federal immigration detainees. The defendant again cites *Printz v. United States*, 521 U.S. 898 (1997), in support, but that case is inapposite. *Printz* dealt with the Brady Handgun Violence Prevention Act which required, *inter alia*, that firearms dealers complete a form in connection with each proposed handgun transfer. That form included the transferee's name, address, date of birth and a sworn statement by the transferee that he or she was not among the classes of prohibited purchasers listed in the statute. 521 U.S. at 902-903. The dealer was then required to transmit the form to the chief law enforcement officer ("CLEO") of the transferee's residence. The statute then placed affirmative duties on CLEOs, including that they "must" make a reasonable effort to determine whether the proposed transfer would be in violation of law. Although not requiring CLEOs to take any action, if the CLEO notifies the dealer of that the proposed transferee is not eligible to receive a handgun, the CLEO "must" provide the would-be transferee with a written statement of the reasons for that determination. If, however, the CLEO does not discover any reason to object to the transfer, he or she "must" destroy any records in his possession relating to the transfer. *Id*. at 903-904. The foregoing affirmative duties are the hallmark of a Tenth Amendment issue and are a far cry from the voluntary arrangements between the plaintiffs and the federal government here.

The plaintiffs have never asserted that they are required to house immigration detainees

or that the federal government has compelled them to do so. Plaintiffs merely assert that the state cannot unilaterally, and somewhat ironically in view of the defense here, rescind a power or prerogative imparted by Congress to ICE, namely contracting with local governments to house immigration detainees.

**The Illinois Way Forward Act Violates the Doctrine of Intergovernmental Immunity.**

In opposition to the counties' intergovernmental immunity claim, defendant repeats his argument that the counties and the state are one and the same and that any powers conferred to the counties can be stripped away by the state at any time. Additionally, defendant points out the lack of federal precedent involving a political subdivision challenging a state statute on the basis of intergovernmental immunity and then, strangely, interprets this lack of precedent as a *per se* rule that such a challenge is impermissible. Notably, the defendant has not cited any precedent indicating a federal court has ever considered the issue that such a *per se* rule has a basis in law.

The plaintiffs' power to engage in intergovernmental cooperation with the federal government is derived from the Illinois Constitution, not the state legislature.

> (a) Units of local government and school districts may contract or otherwise associate among themselves, with the State, with other states and their units of local government and school districts, and *with the United States* to obtain or share services and to exercise, combine, or transfer any power or function in any manner not prohibited by law or by ordinance. Units of local government and school districts may contract and otherwise associate with individuals, associations and corporations in any manner not prohibited by law or by ordinance.

Ill. Const. Art. VII § 10(a) (emphasis added).

The Illinois Constitution can only be amended by referendum. Ill. Const. Art. XIV. Therefore, the state legislature is unable to strip any of the powers, including the power of intergovernmental cooperation, from the counties without approval of a constitutional amendment by the voters. *Id.* The Illinois Way Forward Act clearly tries to *prohibit by law* the

3

intergovernmental cooperation between the counties and the federal government. However, because the Illinois Way Forward Act violates the Supremacy Clause and is therefore unconstitutional, it cannot have the desired effect to prohibit the agreements by law.

Defendant cites a line of Supreme Court cases, none of which involved intergovernmental immunity or preemption, to support the assertion that "the Supreme Court has disfavored state subdivisions' attempts to bring federal constitutional claims against their states." MTD Mem. at 6-7 (Doc # 24). While the defendant is correct that *Hunter, Trenton*, and similar cases have established that political subdivision challenges under the Fourteenth Amendment and Contracts Clause are generally impermissible,[2] challenges under the Supremacy Clause do not face the same obstacle. In *Gomillion v. Lightgoot*, the Court clearly contemplated that political subdivisions have standing to bring claims under other provisions of the Constitution, stating:

> Thus, a correct reading of the seemingly unconfined dicta of *Hunter* and kindred cases is not that the State has plenary power to manipulate in every conceivable way, for every conceivable purpose, the affairs of its municipal corporations, but rather that the State's authority is unrestrained by the particular prohibitions of the Constitution considered in those cases.

*Gomillion v. Lightfoot*, 364 U.S. 339, 344 (1960). Specifically, as is the case here, political subdivisions are not barred from bringing an action where the state has exerted its power in a way which is unconstitutional. "When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Id.* at 347.

---

[2] *E.g., Coleman v. Miller*, 307 U.S. 433 (1939), cited by defendant (MTD Mem. at 7 (Doc # 24)) specifically addressed the Contracts Clause and Fourteenth Amendment, neither of which is at issue in this case. 307 U.S. at 441.

4

The authority for the agreements in question arises from federal law and the subject matter of the agreements is exclusively within the scope of federal jurisdiction. The Illinois Way Forward Act seeks to circumvent the federal government's constitutional power in the field of immigration detention. While the defendant contends that allowing the counties to challenge the Illinois Way Forward Act is an impermissible attack on its sovereignty, an action under the Supremacy Clause is the proper mechanism for determining the extent of that sovereignty and is therefore allowed regardless of the status of the claimant as a political subdivision.

A state law is invalid "if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990). The Illinois Way Forward Act directly regulates the federal government by prohibiting agreements to which the federal government is a party, the content of which—immigration detention—only the federal government exercises authority in. The law is specifically designed to thwart an exclusively federal activity that the State of Illinois politically disagrees with. The fact that the Illinois Way Forward Act does not prevent the counties from contracting with the federal government for U.S. Marshall or Bureau of Prisons detention demonstrates that the law is based on nothing more than the state's desire to thwart or disrupt the federal government with regard to its immigration detention practices.

Defendant argues that because the Illinois Way Forward Act does not mention the federal government by name, it "does not regulate the federal government." MTD Mem. at 7 (Doc. # 24). The statute at issue in *Geo Group, Inc. v. Newsom*, 2021 U.S. App. LEXIS 29898 (9th Cir.), AB 32, did not mention the federal government at all. It merely banned all private detention facilities in California, knowing that the federal government relied exclusively on private detention facilities in that state to house immigration detainees. 2021 U.S. App. LEXIS 29898 at

\*9. AB 32 was nevertheless struck down on preemption and intergovernmental immunity grounds. *Id.* at 39.

> Section 15(g) of the Illinois Way Forward Act provides as follows:
>
> (1) No law enforcement agency, law enforcement official, or any unit of state or local government may enter into or renew any contract, intergovernmental service agreement, or any other agreement to house or detain individuals for *federal civil immigration violations.*

5 ILCS 805/15(g)(1) (emphasis added). *Geo Group,* 2021 U.S. App. LEXIS at \*20 ("the text and context of the statute make clear that state has placed federal immigration policy within its crosshairs") (footnote omitted). Defendant's argument is without merit.

Defendant attacks the counties' ability to succeed on an intergovernmental immunity claim with the same flawed analysis repeated throughout their motion to dismiss, that because the counties are subunits of the state the two entities are basically one and the same. MTD Mem. at 5-7 (Doc #24). An intergovernmental immunity claim is a claim under the Supremacy Clause. See generally *North Dakota v. United States*, 495 U.S. 423 (1990). As demonstrated above, there is no precedent prohibiting a political subdivision from asserting a claim against its parent state under the Supremacy Clause.

The counties may bring a claim under the doctrine of intergovernmental immunity because the counties have contracted with the federal government to perform an exclusively federal activity. Because "a [state] regulation imposed on one who deals with the Government has as much potential to obstruct governmental functions as a regulation imposed on the Government itself," intergovernmental immunity applies to state regulation that impacts government contractors. *North Dakota,* 495 U.S. at 438. The housing of civil immigration detainees is an exclusively federal function. A federal function, even if performed by private contractors, remains free of state regulation unless such regulation is specifically authorized by

6

Congress. *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180-81 (1988), citing *Hancock v. Train*, 426 U.S. 167, 178-79 (1976). Defendant appears to recognize a federal contractor's ability to challenge state regulation of a federal activity by claiming that to "enjoy the benefits of intergovernmental immunity, a federal contractor must serve as an instrumentality…of the federal government." MTD Mem. at 6 (Doc # 24), citing *New Mexico*, 455 U.S. at 735. Defendant goes on to argue that the counties cannot operate as federal instrumentalities because they are part of the state and therefore subject to state regulation at 6 (Doc # 24). For the reasons stated throughout this memorandum, that position is incorrect.

In addition to directly regulating the federal government, the Illinois Way Forward Act also violates the discriminatory aspect of intergovernmental immunity. A state law discriminates against the federal government (or those dealing with the federal government) when it treats others differently than it treats the federal government. *North Dakota*, 495 U.S. at 437-39; *see also Washington v. United States*, 460 U.S. 536, 544-545 (1983). The Illinois Way Forward Act prohibits the federal government and counties' engagement in the specific activity of intergovernmental cooperation for detention services. Meanwhile, the Illinois Intergovernmental Cooperation Act 5 ILCS 220/5 allows any "public agency," which includes the state, to engage in intergovernmental cooperation for detention services. For example, in a situation of prison overcrowding, the state could enter into an intergovernmental agreement with a county to house state prisoners. Because the state or local governments could engage in intergovernmental cooperation for the same activity that the Illinois Way Forward Act prohibits the federal government from engaging in, the state has violated the doctrine of intergovernmental immunity by treating itself or others better than it treats the federal government.

**The Illinois Way Forward Act is Preempted.**

To support its argument that the Illinois Way Forward Act is not preempted, the defendant again treats the state and the counties as one entity, namely the state itself. See Ill. Const. Art. VII, § 10(a), quoted above, authorizing local governments to contract with the state, which would be meaningless if the state was not an entity distinct from the counties. Yet, nowhere does the defendant cite any legal support for this bare conclusion. Plaintiffs do not dispute that the state itself can refuse to cooperate with the federal government in certain areas, including housing immigration detainees. What it cannot do is dictate to the federal government and negate its Congressionally conveyed power to contract with local governments in Illinois to house immigration detainees.

The defendant repeats the arguments he made with respect to preemption in his opposition to plaintiffs' motion for a preliminary injunction (Doc # 25 at 9-15), and the plaintiffs need not repeat their arguments here. See Doc # 31 at 5-7. Defendant does, however, cite some additional cases, none of which support his arguments.

In *New York v. United States*, 505 U.S. 144 (1992), Congress enacted legislation to deal with the safe disposal or storage of low-level radioactive waste generated within a state's borders. Congress gave the states three sets of incentives. The first two sets offered monetary incentives to the states to deal with the disposal of waste and were found by the Court not to be prohibited by the Tenth Amendment. 505 U.S. at 173, 174. The third set of incentives offered the states the choice of regulating waste in accordance with federal instructions or taking title and possession of the waste, along with the liabilities such ownership might entail. *Id.* at 174-75. Because either choice, standing alone, would run afoul of the Tenth Amendment, the Court struck down the third set of incentives. *Id.* at 176. Here, by contrast, neither the state nor the

counties are presented with a Hobson's choice of unconstitutional options. They can agree with the federal government to house immigrations detainees, as the counties have chosen to do, or they can decline, as the state has done. Nothing in the applicable statues requires state or local governments to house immigration detainees or penalizes them for not agreeing to do so.

The defendant also cites *City of Chicago v. Sessions*, 321 F.Supp.3d 855, *aff'd on other grounds sub nom. City of Chicago v. Barr*, 961 F.3d 882 (7th Cir., 2020). MTD Mem. at 10 (Doc # 24). Although the district court in that case expounded at length on the Tenth Amendment, the Seventh Circuit affirmed on the ground that the Attorney General had merely exceeded his statutory authority to condition certain grants on compliance by local law enforcement with immigration reporting requirements. 321 F.3d at 905.

In *United States v. California*, 921 F.3d 865 (9th Cir. 2019) (MTD Mem. at 10 (Doc # 24)), the court held that the statute at issue, which required certain notice provisions, was not preempted by federal law, because it "imposes no additional or contrary obligations that undermine or disrupt the activities of federal immigration authorities." 921 F.3d at 881.

The defendant also selectively quotes from the counties' contracts to make the slippery argument that the parties contemplated that the state has the power to regulate the plaintiffs' performance under their contracts. MTD Mem. at 10 (Doc # 24). The entire paragraph from which the defendant quotes provides as follows:

> The Local Government shall accept and provide for the secure custody, safekeeping, housing, subsistence and care of Federal detainees in accordance with all state and local laws, standards, regulations, policies and court orders applicable to the operation of the Facility. Detainees shall also be housed in a manner that is consistent with Federal law and the Core Detention Standards and/or standards required by an authorized agency whose detainees are housed by the Local Government pursuant to this Agreement.

Doc 7-1 at 3, 19. Manifestly, the state and other laws referred to are those concerned with the

9

conditions of confinement, not the ability of the plaintiffs to contract at all.

The defendant argues that nothing in the federal law demonstrates that the field of immigration detention is preempted. MTD Mem. at 13-14 (Doc # 24). On the contrary, the federal government has always and continues to heavily regulate the field of immigration detention. *E.g.*, 8 U.S.C. § 1226(a) (Attorney General given power to arrest and detain aliens pending a decision on whether they are to be removed); § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal); 8 U.S.C. § 1231(g)(2) ("[p]rior to initiating any project for the construction of any new detention facility," ICE "shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility suitable for detention"); 8 U.S,C § 1103(11)(B) (Attorney General given authority to enter into cooperative agreements with units of local governments for housing immigration detainees). Moreover, the courts have consistently held that the federal government has exclusive authority over the detention and housing of immigration detainees. *E.g., Geo Group, Inc. v. Newson,* 2021 U.S. App. LEXIS 29898 (9th Cir.) ("the federal government exclusively regulates immigration detention"); *Committee of Cent. Amer. Refugees v. Immigration & Naturalization Serv.,* 795 F.2d 1434, 1440 (9th Cir. 1986) ("Congress has placed the responsibility of determining where aliens are detained within the discretion of the Attorney General"), as amended on denial of rehearing 807 F.2d 769 (9th Cir. 1987); *Gandarillas-Zambrana v. Board of Immigration Appeals,* 44 F.3d 1251, 1256 (4th Cir. 1995) ("[t]he INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings"); *Calderon v. Moyers*, 558 F.Supp. 19, 21 (N.D. Ill. 1982) ("[t]he law indicates that the choice of the locations of the detention and the exclusion hearing are within the discretion of the INS"), citing 8 U.S.C. §§ 1223, 1225.

Defendant has cited no case which has held otherwise.

Defendant mischaracterizes 8 U.S.C. § 1103(a)(11)(B) as "authorizing the Attorney General to enter into cooperative agreements for construction, renovations, equipment, and materials needed for detention services in any *state* 'which agrees to provide' bed space for persons detained by ICE." MTD Mem. at 11-12 (Doc # 24) (emphasis added). By using the word *state*, defendant implies that the statute is limited to agreements with the state itself. The relevant language of the statute actually provides that "The Attorney General . . . is authorized . . . to enter into a cooperative agreement with any state, territory, or *political subdivision thereof*, for the necessary construction," etc. 8 U.S.C. § 1103(a)(11)(B) (emphasis added). Defendant's attempt to re-write the statute to suit his needs should be rejected.

Finally, defendant cites *City of El Cenzio v. Texas*, 890 F.3d 164 (5th Cir. 2018). That case dealt with a Texas statute that prohibited "sanctuary cities," by requiring certain state officials to comply with federal immigration enforcement policies. 890 F.3d at 173. These policies included "'inquiring into the immigration status' of lawfully detained individuals," "sharing immigration-status information with federal agencies," and "'assisting or cooperating with a federal immigration officer as reasonable or necessary including providing enforcement assistance.'" *Id* at 174. The case did not address the issue of immigration housing or cooperative agreements between counties and the federal government for such services. Defendant cites this case as "recognizing state authority over whether to use their resources to support federal immigration enforcement." MTD Mem. at 14 (Doc # 24). Again however, the defendant treats the counties and the state as a single entity, which they are not. Housing immigration detainees does not consume the state's resources; it uses those of the counties, including taxes the counties levy and facilities owned and maintained by the counties.

## Conclusion

For all the reasons contained herein, Plaintiffs request this Court to deny defendant's motion to dismiss the Amended Complaint.

McHenry County, Illinois and
Kankakee County, Illinois

By: /s/ George M. Hoffman
One of their attorneys

Patrick D. Kenneally (ARDC No. 6286573)
McHenry County State's Attorney
George M. Hoffman (ARDC No. 6180738)
Jana Blake Dickson (ARDC No. 6305741)
Assistant State's Attorneys
McHenry County Government Center
2200 North Seminary Avenue
Woodstock, Illinois 60098
815-334-4159 (phone)
815-334-0872 (fax)
gmhoffman@mchenrycountyil.gov
jeblake@mchenrycountyil.gov

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of **Plaintiffs' Response to Motion to Dismiss** was served on

Christopher G. Wells
Kathryn Hunt Muse
Alex Hemmer
Eileen Boyle Perich
Office of the Illinois Attorney General
100 W. Randolph St.
Chicago, IL 60601

by electronic filing via the ECF system, before the hour of 4:00 p.m., on October 29, 2021.

/s/ George M. Hoffman