IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MCHENRY COUNTY and KANKAKEE COUNTY, bodies politic and corporate, <br><br> Plaintiffs, <br><br> v. <br><br> KWAME RAOUL, in his official capacity as Illinois Attorney General, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Case No. 21 CV 50341 <br> ) <br> ) Judge Phillip G. Reinhard <br> ) <br> ) Magistrate Judge Lisa A. Jensen <br> ) <br> ) |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

Plaintiffs submit this memorandum addressing the two issues identified by the Court in its November 17, 2021, Order. Each of the issues is addressed below.

> **1.** **"The application of Murphy v. NCAA, 138 S.Ct. 1461 (2018) to this case,, discussing both its application of the anticommandeering doctrine and its discussion of preemption ('Our cases have identified three different types of preemption "conflict," "express," and "field," "but all of them work the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or restrictions that conflict with the federal law; and therefore, the federal law takes precedence and the state law is preempted.' Id. at 1480 (emphasis added). '[E]very form of preemption is based on a federal law that regulates the conduct of private actors, not the States.' Id. at 1481."**

As is evident upon reflection of the anti-commandeering rule's purpose, as discussed at length in *Murphy*, the rule was never meant to govern the factual circumstances at issue here. The underlying logic of the anti-commandeering rule was to ensure the Federal government could not "command" the States or their political subdivisions, compelling them "to administer or enforce a federal regulatory program." *Id.* at 1477. Moreover, the rule was created to: 1) ensure state sovereignty, thereby balancing power, reducing the risk of tyranny or abuse from either the states or federal government; 2) promote political accountability so that responsibility

for certain regulatory programs commanded by the federal government is not mistakenly imputed to the States; and 3) ensure that the federal government cannot shift the costs of its regulatory frameworks to the States. *Id.*

Upholding the Illinois Way Forward Act on anti-commandeering grounds accomplishes none of these purposes. First, 8 U.S.C. §1103 and 8 U.S.C. § 1231(g)(1), do not command, compel, or demand that the State institute a regulatory scheme or perform any other action. Rather, they authorize a permissive contractual association that is entirely voluntary - empowering the federal government to house immigration detainees in the facilities of willing partners.

Neither will upholding the Illinois Way Forward Act promote political transparency or accountability. The voters in plaintiff counties, who are directly impacted by the contracts, have ample opportunity to hold accountable elected officials for choosing to contract with or dissociate itself from ICE. This is not an instance where the federal government is conscripting the State to perform some type of labor or enforcement. Rather, it permits both federal and local officials to make affirmative, voluntary decisions about whether to contract, and both can be held accountable respectively by voters as they select local and federal representatives.

Lastly, not only do the contracts cost the counties and the State nothing, it is a source of reliable revenue. As pled, the contracts generate over $8 million and $4 million annually for McHenry and Kankakee counties, respectively.

As discussed further in *Murphy*, the anti-commandeering principle does not apply when "Congress evenhandedly regulates an activity in which both States and private actors engage." 138 S.Ct. at 1478. In reaching this conclusion, *Murphy* cited *Reno v. Condon*, 528 U.S. 141 (2000):

>...which concerned a federal law restricting the disclosure and dissemination of personal information provided in applications for driver's licenses. The law applied equally to state and private actors. It did not regulate the States' sovereign authority to 'regulate their own citizens.'

138 S.Ct. at 1479, quoting *Reno*, 528 U.S. at 151.

In this case, 8 U.S.C. §1231, one of the two sections plaintiffs have cited as preempting the Illinois Way Forward Act, permits the federal government to contract with States and private facilities alike. *See also Geo Group v. Newsom,* 2021 U.S. App. Lexis 29898 (9th Cir. 2021). In view of Congress's even-handed allowance of both state/local officials and private actors to contract for "confinement and detention services," the anti-commandeering rule by the terms of clear precedent is inapplicable.

The *Murphy* Court also highlighted *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264 (1981),

> which involved what has been called "cooperative federalism," by no means commandeered the state legislative process. Congress enacted a statute that comprehensively regulated surface coal mining and offered States the choice of "either implement[ing] the federal program "or else yield[ing] to a federally administered regulatory program." *Ibid.* Thus, the federal law *allowed* but did not *require* the States to implement a federal program. "States [were] not compelled to enforce the [federal] standards, to expend any state funds, or to participate in the federal regulatory program in any manner whatsoever."

*Id.* at 1479, quoting *Hodel*, 452 U.S. at 288, 289 (emphasis and bracketed material in original). Indeed, *Murphy* was particularly preoccupied with ensuring that the federal government not interfere with the states' legislative process, not with the administrative decisions of local government officials. The Court stated:

> In either event, [the problem is that] state legislatures are put under the direct control of Congress. It is as if federal officers were installed in state legislative chambers and were armed with the authority to stop legislators from voting on any offending proposals. A more direct affront to state sovereignty is not easy to imagine.

138 S.Ct. at 1478.

As in *Hodel,* the Illinois legislature is not being "compelled to enforce [any federal] standards, to expend any state funds, or to participate in [any] federal regulatory program in any manner whatsoever." The defendant can point to no federal statute that either requires the State or local government to house immigration detainees or prohibits those entities from declining to do so. The defendant is free not to use state facilities, those that are operated and paid for by the State, any way they wish irrespective of the wishes or requests of the Federal government. Rather, and as in *Hodel*, the States have a choice of either contracting with the federal government with regard to their own state run and financed facilities or not.

The Court's *dicta* that "every form of preemption is based on a federal law that regulates the conduct of private actors, not the States," *id.* at 1481, is not accurate. For example, in *Arizona v. United States*, 567 U.S. 387 (2012), a case noted in *Murphy*, the Court struck down section 6 of an Arizona law that gave local law enforcement officials, not private actors, the authority to arrest someone the officer had probable cause to believe had committed an offence that would make that person removable from the United States. 567 U.S. at 407. Finding that the "removal process is entrusted to the discretion of the Federal Government," *id.* at 409, the Court held that "Section 6 is pre-empted by federal law." *Id.* at 410.

In *Lawrence County v. Lead-Deadwood School Dist.*, 469 U.S. 256 (1985), Congress had enacted the Payment in Lieu of Taxes Act, 31 U.S.C. § 6901, *et seq.* That act compensated local governments directly—not state governments or private parties—for the loss of tax revenues from tax-exempt federal lands within the local government's jurisdictions, such as national parks and wilderness areas. 138 S.Ct. at 258. These lands draw thousands of visitors each year who, while they may contribute to the local economy, contribute relatively little to the local

governments to compensate for increased law enforcement, road construction and maintenance, sanitation, hospitals, and other services such visitors require. *Id.* at 265. Under the act, the Federal government made payments directly to local governments, specifying they "may use the payment for any governmental purpose." *Id.* at 258 (citation omitted).

South Dakota enacted a statute requiring local governments to distribute federal payments, including those received under the Payment in Lieu of Taxes Act, in accordance with the way they distribute general revenues, which meant that the plaintiff would have to distribute 60% of the funds to school districts. *Id.* at 259. The plaintiff county refused and brought suit challenging the state law. After its lawsuit in federal court was dismissed on jurisdictional grounds (a ruling the Supreme Court said was error, *id.* at 259 n. 6), the plaintiff re-filed in state court. The circuit court held the state law was preempted, but the state supreme court reversed. The Supreme Court, after discussing both the language of the Payment in Lieu of Taxes Act and its legislative history, struck down the South Dakota Act as violative of the Supremacy Clause. *Id.* at 270 ("The attempt of the South Dakota legislation to limit the manner in which counties or other qualified local governmental units may spend federal in-lieu-of-tax payments obstructs this congressional purpose and runs afoul of the Supremacy Clause"). See also *Tweed-New Haven Airport Auth. v. Tong*, 930 F.2d 65 (2d Cir. 2019), a case brought by a "body politic and corporate" (930 F.3d at 68 n.1) against Connecticut's attorney general challenging a newly-enacted state law that limited the length of the airport runway managed by plaintiff, which the plaintiff sought to lengthen. *Id.* at 68-69. The statute at issue imposed no restrictions and conferred no rights on private actors. Finding that the Federal Aviation Act pre-empted the "'entire field of air safety,'" *id.* at 74 (quoting *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224-35 (2008), the court struck down the Connecticut statute, 930 F.3d at 74, stating:

5

> If the Supremacy Clause means anything, it means that a state is not free to enforce within its boundaries laws preempted by federal law. Lawsuits invoking the Supremacy Clause are one of the main ways of ensuring that this does not occur.

*Id.* at 73. But see *Ocean Ct. Bd. of Comm'rs v. Attorney Gen'l,* 8 F.4th 176 (2021) (applying *dicta* from *Murphy* to uphold New Jersey Attorney General's directive that prohibited counties and local law enforcement from assisting federal immigration enforcement).

Clearly, federal laws do not merely regulate private actors. The United States Code is saturated with instances of Congress regulating federal officials, or in other words, conferring powers, rights, responsibilities, and prohibitions on federal actors such the Attorney General, Administrator of the U.S. Environmental Protection Agency, IRS agents, etc. Any state law abridging, attenuating, or modifying the manner in which federal officials are regulated would clearly be vulnerable to a preemption challenge. For example, if the Illinois legislature passed a statute prohibiting FBI agents from making arrests in Illinois, though the law would not be regulating private actors, it would indisputably be preempted.

The same principle applies here. Illinois is attempting to abrogate the explicitly congressionally conferred power permitting the Attorney General to contract with local units of government. In other words, it is the State that is issuing commands and prohibitions and impeding not only on federal supremacy, but its sovereignty.

Murphy appears to apply only when the federal government is seeking to impose a specific and comprehensive regulatory scheme on the State as it relates to private actors (*i.e.*, the commanding that the State use its resources to ensure that no one gambles, engages in prostitution, allows child labor, etc.). Here, there is no such imposition of a regulatory scheme. Rather, the federal government is merely seeking to fund and execute its own regulatory scheme relating to immigration and immigrant detention, the provision of which are being disrupted and

frustrated by the Illinois Way Forward Act.

        **2.     Generally, where some Illinois local governments have entered contracts to provide a category of services, for example information technology services to other entities, and those contracts allow either party to voluntarily terminate the contract, can the State of Illinois by statute require the service-providing local governments to exercise their contractual right to terminate those contracts by a certain date?**

In short, the answer to the Court's second question is, yes, except in this case, because the legislature has overstepped its power by attempting to regulate the plaintiffs' contracting powers with a statute which violates the Supremacy Clause.

As non-home rule units of local government, plaintiff counties have only those powers granted to them by law. Ill. Const. Art. VII, Sec. 7. The Illinois Constitution and the Illinois Counties Code have granted plaintiffs the power to contract, including the power to engage in intergovernmental cooperative agreements. Ill Const. Art. VII, Sec. 10(a) and 5 ILCS 220/1, *et seq*. "Units of local government and school districts may contract or otherwise associate among themselves, with the State, with other States and their units of local government and school districts, and with the United States to obtain or share services and to exercise, combine, or transfer any power or function, in any manner not prohibited by law or by ordinance." Ill. Const. Art. VII, Sec. 10(a). The phrase, "in any manner not prohibited by law or ordinance," indicates that the Illinois legislature is vested with the power to make laws prohibiting intergovernmental cooperation by units of local government. However, because the Illinois Way Forward Act is preempted by federal law and is an unconstitutional violation of the Supremacy Clause, as outlined in plaintiffs' memoranda, the intergovernmental cooperation agreements between the plaintiff counties and the federal government cannot be prohibited by state law.

Plaintiffs have been unable to locate any previous instance in which the Illinois legislature granted to units of local government the power to contract, and then required an entity

to terminate a contract. As noted above, the legislature is vested with the power to extend or restrict the contracting activities of units of local government. Additionally, political subdivisions are barred from bringing an impairment of contracts claim under Contracts Clause and there is no conceivable state law claim. As such, plaintiffs presume that had the legislature passed a law which was not violative of the Supremacy Clause, or otherwise contrary to law, which required the cancellation of an intergovernmental cooperative agreement by a certain date that law would not face a legitimate legal challenge.

## Conclusion

For the reasons stated herein, and in the plaintiffs' previous memoranda, this Court should strike down section 15(g0 of the Illinois Way Forward Act as preempted by federal law.

McHenry County, Illinois and
Kankakee County, Illinois


By: /s/ George M. Hoffman
    One of their attorneys

Patrick D. Kenneally (ARDC No. 6286573)
McHenry County State's Attorney
George M. Hoffman (ARDC No. 6180738)
Jana Blake Dickson (ARDC No. 6305741)
Assistant State's Attorneys
McHenry County Government Center
2200 North Seminary Avenue
Woodstock, Illinois 60098
815-334-4159 (phone)
815-334-0872 (fax)
gmhoffman@mchenrycountyil.gov
jeblake@mchenrycountyil.gov

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of **Plaintiffs' Supplemental Memorandum** was served on

Christopher G. Wells
Kathryn Hunt Muse
Alex Hemmer
Eileen Boyle Perich
Office of the Illinois Attorney General
100 W. Randolph St.
Chicago, IL 60601

by electronic filing via the ECF system, before the hour of 4:00 p.m., on November 22, 2021.

/s/ George M. Hoffman