IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| McHenry County, et al., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 C 50341 |
| vs. | ) | |
| | ) | |
| Kwame Raoul, | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendant. | ) | |

**ORDER**

For the reasons stated below, defendant's motion to dismiss [23] is granted. Defendant's motion to strike [22] is denied as moot. Plaintiffs' motion for preliminary injunction [9] is denied as moot. This case is dismissed with prejudice as amendment would be futile.

**STATEMENT-OPINION**

Plaintiffs, the Illinois counties of McHenry and Kankakee, bring this action [7] against defendant, Kwame Raoul, in his official capacity as Illinois Attorney General. Plaintiffs each have a cooperative agreement with the federal government under which plaintiffs house certain categories of federal detainees. One of these categories of detainees is individuals detained for federal civil immigration violations. As to the housing of these immigration detainees, 8 U.S.C. § 1103(a)(11)(B) provided the Attorney General of the United States the statutory authority to enter to these agreements with plaintiffs.

The recently enacted Illinois Way Forward Act, 5 ILCS 805 5/15(g)(1), (2), prohibits any unit of Illinois state or local government from entering or renewing an agreement to house individuals detained for federal civil immigration violations and requires any unit of Illinois state or local government with an existing such agreement to exercise the termination provision of that agreement no later than January 1, 2022.[1]

The claim alleged in plaintiffs' complaint is that the Illinois Way Forward Act unlawfully requires them to terminate their contracts with the United States to house individuals detained for federal civil immigration violations and unlawfully prohibits them from ever entering contracts to house such civil immigration detainees in Illinois jails. They advance two legal theories, grounded in the Supremacy Clause of the United States Constitution, U.S. CONST., art. VI, cl. 2, to support this claim: (1) that as contractors for the United States they enjoy and are clothed with the federal government's intergovernmental immunity (Count I); and (2) that the Illinois Way Forward Act is preempted by federal law (Count II). The relief they seek in the complaint is a declaration that the Illinois Way Forward Act is unconstitutional and an injunction enjoining the defendant from enforcing the Illinois Way Forward Act against them.

Before the court are plaintiffs' motion for a preliminary injunction [9] and defendant's motions to dismiss for failure to state a claim upon which relief can be granted [23] and to strike portions of the complaint [22]. Fed. R. Civ. P. 12(b)(6), (f).[2]

---

[1] The wisdom of enacting this law, or any other law, is, of course, a legislative decision in which the judiciary must not meddle.
[2] Amicus briefs have been filed by the Immigration Reform Law Institute in support of the plaintiffs and the National Immigrant Justice Center in support of defendant.

The Agreements

Plaintiffs each entered into a Detention Services Intergovernmental Agreement ("Agreement" or "Agreements") with the United States Department of Justice United States Marshals Service ("USMS")[3] "for the housing, safekeeping, and subsistence of Federal detainees" in plaintiffs' facilities. Each Agreement provides for the USMS and ICE to house, in plaintiffs' facilities, federal detainees including, among others, "individuals who are awaiting a hearing on their immigration status or deportation." *Dkt #* 7-1, pp. 3, 19.

Each Agreement provides: "Either party may terminate this Agreement for any reason with written notice at least thirty (30) calendar days in advance of termination, unless an emergency situation requires the immediate relocation of Federal detainees." *Id.*, pp. 3-4, 19.

Each Agreement also provides that the "Federal Government shall be notified, in writing, of all litigation pertaining to this Agreement and provided copies of any pleadings filed or (sic) said litigation within five (5) working days of the filing" and that the "Local Government shall cooperate with the Federal Government legal staff and/or the United States Attorney regarding any requests pertaining to Federal Government or Local Government litigation." *Id.*, pp. 12, 27-28.

The Illinois Way Forward Act

The Illinois TRUST Act ("TRUST Act") (5 ILCS 805/1 et seq.) became effective August 28, 2017. The legislative purpose section of the TRUST Act states: "Recognizing that State law does not currently grant State or local law enforcement the authority to enforce federal civil immigration laws, it is the intent of the General Assembly that nothing in this Act shall be construed to authorize any law enforcement agency or law enforcement official to enforce federal civil immigration law." 5 ILCS 805/5. The TRUST Act includes a section entitled "Prohibition on enforcing federal civil immigration laws." 5 ILCS 805/15. On August 2, 2021, the Illinois Way Forward Act ("Act") became effective. The Act amended the "Prohibition on enforcing federal civil immigration laws" section of the TRUST Act (5 ILCS 805/15) to add the following paragraph (g):

(1) No law enforcement agency, law enforcement official, or any unit of state or local government may enter into or renew any contract, intergovernmental service agreement, or any other agreement to house or detain individuals for federal civil immigration violations.

(2) Any law enforcement agency, law enforcement official, or unit of state or local government with an existing contract, intergovernmental agreement or other agreement, whether in whole or in part, that is utilized to house or detain individuals for civil immigration violations shall exercise the termination provision in the agreement as applied to housing or detaining individuals for civil immigration violations no later than January 1, 2022."

5 ILCS 805/15(g).

The Complaint

Plaintiffs filed this action on September 1, 2021 challenging the constitutionality of this newly enacted paragraph (g) and filed an amended complaint [7] on September 15, 2021.[4]

---

[3] In each Agreement, the USMS is referred to as the "Federal Government" and each plaintiff is referred to as the "Local Government".

[4] On October 29, 2021, in response to the court's order [32] the plaintiffs filed copies of the written notices concerning this litigation they had sent to the Federal Government as required by the terms of each Agreement. These filings showed that McHenry County provided the Federal Government notice of this litigation by letter dated

The complaint alleges that as contractors for the United States plaintiffs enjoy and are clothed in the federal government's intergovernmental immunity and that by prohibiting intergovernmental agreements with local governments the Act substantially interferes with the federal government's operation and ICE's ability to carry out its detention responsibilities for the federal government. Plaintiffs allege the United States has not authorized the State of Illinois to regulate the federal government's activities with respect to housing immigration detainees. They allege that, despite the lack of authorization from the United States to do so, the Act directly regulates federal operations by restricting the United States' ability to enter agreements with local governments to house immigration detainees. Thus, they allege the Act violates the federal government's intergovernmental immunity and is unconstitutional and invalid as applied to the Agreements.

The complaint also alleges the Act is preempted by federal law. They allege that the United States has occupied the field of contracting for housing federal immigration detainees leaving no room for concurrent state regulation; that the Act, by requiring plaintiffs to terminate the Agreements, substantially obstructs the federal government's housing of federal immigration detainees, stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, and thus, is preempted.

Federal Law

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens. This authority rests, in part, on the National Government's constitutional power to 'establish an uniform Rule of Naturalization', Art. I, § 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations." *Arizona v. United States*, 567 U.S. 387, 394-95 (2012). "ICE officers are responsible for the identification, apprehension, and removal of illegal aliens from the United States." *Id.* at 397 (internal quotation marks and citation omitted).

In conjunction with the exercise of the responsibility for the identification, apprehension, and removal of illegal aliens from the United States, Congress has provided that the "Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). "When United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General may expend . . . amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities . . . necessary for detention." *Id.*

Prior to initiating any project to construct any such new detention facility, ICE "shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility suitable for such use." 8 U.S.C. § 1231(g)(2).

In performing the Section 1231(g) duty to arrange for appropriate places of detention for aliens detained pending removal or a decision on removal, if the Attorney General wants to house these detainees in state facilities or the facilities of a state's political subdivision, Congress has provided the process by which the Attorney General may do so in 8 U.S.C. § 1103(a)(11)(B).

Section 1103(a)(11)(B) authorizes the United States Attorney General "to enter into a cooperative agreement with any State, territory, or political subdivision thereof, for the necessary construction,

---

September 1, 2021, *Dkt #* 35, p. 2. However, McHenry County did not notify the Federal Government of the plaintiffs' amended complaint or motion for preliminary injunction until it sent a letter doing so dated October 28, 2021. *Id.*, p.3. Kankakee County did not send any notice to the Federal Government until it sent a letter dated October 29, 2021 advising that Kankakee County "had joined with McHenry County" in this case. *Id.*, p.4. While these latter notifications appear to be untimely under the Agreements, the original notice of the suit given by McHenry County was timely. The United States has not sought to intervene in this case.

physical renovation, acquisition of equipment, supplies or materials required to establish acceptable conditions of confinement and detention services in any State or unit of local government which agrees to provide guaranteed bed space for persons detained by [United States Immigration and Customs Enforcement ("ICE")]."

Analysis

*Preemption*

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level, this requirement is met. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v, Iqbal, 556 U.S. 662 (2009).

Under Illinois law, counties "derive their existence and all their powers from the legislature which created them." *Moy v. County of Cook*, 614 N.E.2d 265, 267 (Ill. App. 1993). Plaintiffs concede that "[a]s non-home rule units of local government, plaintiff counties have only those powers granted them by law. Ill. Const. Art. VII, Sec. 7." Dkt # 39, p.7. Article VII, Section 10 of the Illinois Constitution, captioned "Intergovernmental Cooperation," provides: "Units of local government and school districts may contract or otherwise associate among themselves, with the State, with other states and their units of local government and school districts and with the United States to obtain or share services and to exercise, combine, or transfer any power or function, in any manner not prohibited by law or by ordinance." Plaintiffs concede that the "phrase 'in any manner not prohibited by law or by ordinance' in this section of the Illinois Constitution indicates that the Illinois legislature is vested with the power to make laws prohibiting intergovernmental cooperation by units of local government." *Id.*

In answer to a question posed by the court[5], plaintiffs answered that generally the State of Illinois could by statute require local governments to exercise voluntary termination provisions in contracts they had entered to provide a category of services where those contracts allowed either party to voluntarily terminate the contract. *Id.* Plaintiffs, while acknowledging this general authority, argue this case is an exception because in this case, "the legislature has overstepped its power by attempting to regulate the plaintiffs' contracting powers with a statute which violates the Supremacy Clause." *Id.*

The Supremacy Clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST., art. VI, cl. 2. "Under this principle, Congress has the power to preempt state law." *Arizona*, 567 U.S. at 399.

Plaintiffs argue the Act is "field preempted" because federal law occupies the field of immigration regulation and "conflict preempted" specifically by 8 U.S.C. § 1231(g) and 8 U.S.C. § 1103(a)(11)(B).

---

[5] The court posed the following question for the parties to answer: "Generally, where some Illinois local governments have entered contracts to provide a category of services, for example information technology services, to other entities, and those contracts allow either party to voluntarily terminate the contract, can the State of Illinois by statute require the service-providing local governments to exercise their contractual right to terminate those contracts by a certain date?" [38]

Section 1231(g) gives the Attorney General broad discretion to house immigration detainees and to lease facilities to do so. However, when it comes to housing immigration detainees in the facilities of a state or a state's unit of local government, the Attorney General can only exercise his or her Section 1231(g) authority through the provisions of Section 1103(a)(11)(B). Thus, it is Section 1103(a)(11)(B), not Section 1231(g), that is the relevant statute that must be considered to see if the Act is preempted.

The Ninth Circuit Court of Appeals recently examined Section 1103 in *Geo Group, Inc. v. Newsom*, 15 F.4th 919 (9th Cir. 2021), a case cited by both sides in this case, involving a California law phasing out all private detention facilities within the State of California. "[T]he text and structure of § 1103 suggest that the provision is about federalism—specifically the anticommandeering doctrine—and not about specific detention operations." *Geo Group* at 933. Section 1103(a)(11)(B) "allows the Attorney General to enter into 'cooperative agreement[s]' with States for state-run immigration detention facilities. By setting the conditions under which the United States can house immigrant detainees in state and local government facilities, § 1103(a)(11) clarifies that the federal government cannot commandeer state and local governments into serving federal functions." *Id*. (alteration in original).

*Geo Group* goes on to review the original version of Section 1103 enacted in 1996 noting that the "structure of the 1996 version of 8 U.S.C. § 1103 supports this federalism-based interpretation." *Id.* at 934. "Sub-section (a)(1) specifies that the Attorney General 'shall be charged with the administration and enforcement of this chapter,' which includes § 1231: 'Detention.' *Id.* § 1103(a)(1) (1996). Sub-sections (a)(2) through (a)(6) establish various supporting powers the Attorney General possesses to carry out his or her duties under Chapter Twelve." *Id.*

"The rest of sub-section (a) provides certain limitations to this general delegation when the immigration power touches other constitutional areas. Thus, sub-sections (a)(7) through (a)(9) concerns the overlap of immigration with foreign affairs." *Id*. Requiring, for example, the concurrence of the Secretary of State to establish immigration offices in foreign countries. "The sub-sections addressing the states—which include the precursor to § 1103(a)(11) —are no different. Sub-sections (8) and (9)[6] concerned the overlap of immigration with federalism. . . . [S]ub-section (a)(9)—the 1996 precursor to today's § 1103(a)(11)-- authorized the Attorney General to expend funds and enter agreements with states to house immigration detainees." *Id.* "Read in harmony with their neighboring provisions, these provisions address the special circumstances where the immigration power touches on federalism." *Id*. Thus, Section 1103(a)(11)(B) is a federalism-based limitation on the Attorney General's broad Section 1231(g) authority to house immigration detainees. It is only through a cooperative agreement entered under the authority of Section 1103(a)(11)(B) that the Attorney General may house immigration detainees in the facilities of a state or a state's political subdivision.

In *Murphy v. NCAA*, __ U.S. ___, 138 S. Ct. 1461 (2018) the Supreme Court stated that its cases recognize "three different types of preemption— 'conflict,' 'express,' and 'field,'—but all of them work in the same way. Congress enacts a law that imposes restrictions or confers rights on *private actors*; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Murphy*, 138 S. Ct. at 1480 (emphasis added) (citation omitted). "[E]very form of preemption is based on a federal law that regulates the conduct of private actors, not the States." *Id*. at 1481. Plaintiffs are political subdivisions of the State of Illinois. They are not private actors. Section 1103(a)(11)(B) only deals with public entities—states and their political subdivisions. It confers no rights and imposes no restrictions on any private actors. [7] Therefore, Section 1103(a)(11)(B) does not preempt the Act.

---

[6] The 1996 version of Section 1103 contained two (a)(8)s and two (a)(9)s.
[7] The court asked for supplemental briefs to address the following: "The application of Murphy v. NCAA, 138 S. Ct. 1461 (2018) to this case, discussing both its application of the anticommandeering doctrine and its discussion of preemption ("Our cases have identified three different types of preemption 'conflict,' 'express,' and 'field' but all of

In their supplemental brief on *Murphy*'s preemption analysis, plaintiffs refer to *Murphy*'s statement that a prerequisite to preemption is that "Congress enacts a law that imposes restrictions or confers rights on private actors" as dicta and argue that the Supreme Court's analysis is wrong. *Dkt #* 39, pp. 4-6. However, *Murphy*'s preemption analysis is not dicta[8]. The respondents and the United States (appearing as an amicus) in *Murphy* specifically argued the federal statute at issue "was a valid preemption provision." *Murphy*, 138 S. Ct. at 1479. The Court analyzed several of its prior cases to illustrate that all its prior cases, whether involving "express," "conflict," or "field" preemption, involved federal statutes that imposed restrictions or conferred rights on private actors and summarized that "regardless of the language sometimes used by Congress and this Court, every form of preemption is based on a federal law that regulates the conduct of private actors, not the States." *Id*. at 1481. The Court then stated "[o]nce this is understood, it is clear that [the subject federal statute] is not a preemption provision because there is no way in which this provision can be understood as a regulation of private actors." *Id*. The Court's conclusion that the federal statute at issue was not a valid preemption provision because it did not impose restrictions or confer rights on private actors was essential to the court's holding that the federal statute was barred by the anticommandeering rule. *Id*.

As to the argument that *Murphy*'s preemption analysis is wrong, if the analysis is in error, it is not for an inferior court to correct.

Plaintiffs do not argue that 8 U.S.C. § 1103(a)(11)(B) imposes restrictions or confers rights on private actors, and it clearly does not. Accordingly, under *Murphy*, the Act is not preempted by 8 U.S.C. § 1103(a)(11)(B). *Accord*, *Ocean County Board of Commissioners v. Attorney General of the State of New Jersey*, 8 F. 4th 176, 182 (3rd Cir. 2021) ("A federal statute that does not regulate private actors cannot serve as a basis for preemption.")

Even if the court were to engage in a preemption analysis of whether Section 1103(a)(11)(B) preempts the Act, the conclusion would be that it does not. Plaintiffs contend that the inclusion of the phrase "to enter into a cooperative agreement with any State, territory, or political subdivision thereof" in Section 1103(a)(11)(B) demonstrates Congress' intent to allow the United States to enter a cooperative agreement with any political subdivision of any state to house immigration detainees notwithstanding any law of that state prohibiting such an agreement.

"[B]oth the Federal Government and the States wield sovereign powers, and that is why our system of government is said to be one of 'dual sovereignty'". *Murphy*, 138 S. Ct. at 1475. In contrast, "[p]olitical subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. They are instead subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions." *Ysursa v. Pocatello Education Association*, 555 U.S. 353, 362 (2009) (quotation marks and citation omitted). States are sovereigns. Counties are not.

As plaintiffs concede, generally the "Illinois legislature is vested with the power to make laws prohibiting intergovernmental cooperation by units of local government," *Dkt #* 39, p. 7. Did Congress

---

them work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or restrictions that conflict with the federal law; and therefore, the federal law takes precedence and the state law is preempted." Id. at 1480 (emphasis added). "[E]very form of preemption is based on a federal law that regulates the conduct of private actors, not the States." Id. at 1481. [38]

[8] Dicta or dictum is "a passage that 'was unnecessary to the outcome of the earlier case and therefore perhaps not fully considered as it would have been if it were essential to the outcome' or where 'the issue addressed . . . was not presented as an issue, hence was not refined by adversary presentation.'" *Bradley v. Village of University Park, Illinois*, 929 F.3d 875, 908 (7th Cir. 2019) (ellipsis in original), quoting *United States v. Crawley*, 837 F.2d 291, 292-93 (7th Cir. 1988).

intend to alter this power of the State of Illinois over its units of local government when it included the phrase "or political subdivision thereof" in Section 1103(a)(11)(B)?

"Congress should make its intention clear and manifest if it intends to pre-empt the historic powers of the States." *Gergory v. Ashcroft*, 501 U.S. 452, 461 (1991) (quotation marks and citation omitted). "[F]ederal legislation threatening to trench on the States' arrangements for conducting their own governments should be treated with great skepticism, and read in a way that preserves a State's chosen disposition of its own power, in the absence of the plain statement *Gregory* requires." *Nixon v. Missouri Municipal League*, 541 U.S. 125, 140 (2004).

In *Nixon*, the State of Missouri had a statute providing that "[n]o political subdivision of this state shall provide or offer for sale, either to the public or to a telecommunications provider, a telecommunications service or telecommunications facility." *Id*. at 129. Federal law authorized "preemption of state and local laws expressly or effectively prohibiting the ability of any entity to provide telecommunications services." *Id.* at 128 (quotation marks omitted). The Court stated that the question presented was "whether the class of entities includes the State's own subdivisions, so as to affect the power of States and localities to restrict their own (or their political inferiors) delivery of such services," i*d*. at 128-29, and held it did not. *Id.*

The court explained that "when a government regulates itself (or the subdivisions through which it acts) there is no clear distinction between the regulator and the entity regulated. Legal limits on what may be done by the government itself (including its subdivisions) will often be indistinguishable from choices that express what the government wishes to do with the authority and resources it can command. That is why preempting state or local governmental self-regulation (or regulation of political inferiors) would work so differently from preempting regulation of private players that we think it highly unlikely that Congress intended to set off on such uncertain adventures." *Id*. at 134.

The use of the phrase "or political subdivision thereof" does not make clear and manifest that Congress intended in Section 1103(a)(11)(B) to prohibit the state from controlling its political subdivisions' authority to enter intergovernmental cooperation agreements thus upending the State's historic authority to do so. There is nothing in the statute stating an intent to remove this traditional authority of a state over its subdivision and it is "unlikely that Congress intended to set off on such uncertain adventures" by its inclusion of the phrase "or political subdivisions thereof" in the statute.

Returning to *Geo Group*'s discussion of Section 1103, the Ninth Circuit recognized that it was the *state's* sovereignty being recognized by Section 1103(a)(11)'s federalism-based limitations. Section 1103(a)(11)(B) "allows the Attorney General to enter into 'cooperative agreement[s]' with *States* for state-run immigration detention facilities. *Geo Group* at 933 (emphasis added). "The sub-sections addressing the *states*—which include the precursor to § 1103(a)(11) —are no different. Sub-sections (8) and (9)[9] concerned the overlap of immigration with federalism. . . . [S]ub-section (a)(9)—the 1996 precursor to today's § 1103(a)(11)-- authorized the Attorney General to expend funds and enter agreements with *states* to house immigration detainees." *Id*. at 934 (emphasis added). *Geo Group* does not mention political subdivisions in its discussion of federalism and Section 1103(a)(11). Given the fact that states are dual sovereigns with the United States and political subdivisions "never were and never have been considered as sovereign entities," *Ysursa*, 555 U.S. at 362, it is the State's, not the plaintiffs', sovereignty that is protected by the limitation on the Attorney General's Section 1231(g) authority to house immigration detainees imposed by Section 1103(a)(11)(B). As such, Section 1103(a)(11)(B) does not confer a right on the plaintiffs to contract with the United States to house immigration detainees where the State has prohibited them by statute from entering or maintaining such a contract.

---

[9] Recall, the 1996 version of Section 1103 contained two (a)(8)s and two (a)(9)s.

*Intergovernmental Immunity*

A state law is invalid as violating the United States' intergovernmental immunity "if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990). Plaintiffs argue that "[i]n the context of a county contracting with the federal government for the housing of federal detainees, the [Act] directly regulates the federal government in violation of the principle of intergovernmental immunity by prohibiting the federal government's contractors, [plaintiffs], from performing an inherently federal activity, immigration detention." *Dkt* # 10, p.10. Plaintiffs also contend the Act "discriminates against the federal government because only the federal government is responsible for immigration detention, which is the only detention activity regulated by the [Act] and because there is no prohibition on state actors, like other counties or IDOC, contracting with county jails for detention services." *Id*. As contractors with the United States, plaintiffs assert they are clothed with the intergovernmental immunity of the United States and, therefore, the Act is unconstitutional as applied to the Agreements based on its violation of the United States' intergovernmental immunity.

As discussed above, Section 1103(a)(11)(B) is a federalism-based limitation on the Attorney General's broad Section 1231(g) authority to house immigration detainees. So, while it is true that only the federal government is responsible for immigration detention, the federal government can only house those detainees in the facilities of a state or a state's political subdivision via a cooperative agreement entered pursuant to Section 1103(a)(11)(B) and the State has the authority to determine whether it or any of its political subdivisions may enter or remain in such agreements. The State of Illinois, by legislative act, has decided that its political subdivisions may not enter or remain in such agreements.

The Act, therefore, does not violate the federal government's intergovernmental immunity. The Act does not directly regulate the federal government nor discriminate against the federal government or the plaintiffs (as the federal government's contractors) because the federal government's authority to house immigration detainees in the facilities of the State or its political subdivisions is controlled by Section 1103(a)(11)(B) which recognizes the State's status as a dual sovereign and leaves to the State the decision whether it or any of its political subdivisions enter, or remain in, cooperative agreements under Section 1103(a)(11)(B).

The State, via the Act, has decided its political subdivisions, including plaintiffs, can no longer enter Section 1103(a)(11)(B) agreements and must terminate any existing such agreements. This a valid exercise of the State's sovereign authority and, therefore, plaintiffs cannot state a claim upon which relief can be granted.

For the foregoing reasons, defendant's motion to dismiss [23] is granted. Defendant's motion to strike [22] is denied as moot. Plaintiffs' motion for preliminary injunction [9] is denied as moot. This case is dismissed with prejudice as amendment would be futile.

Date: 12/06/2021               ENTER:

                       *Philip G. Reinhard*
                       United States District Court Judge

                       Electronic Notices. (LC)