IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| McHenry County, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Judge Philip G. Reinhard |
| | ) | |
| vs. | ) | |
| | ) | |
| Kwame Raoul, | ) | Case No. 21 C 50341 |
| | ) | |
| Defendant. | ) | |

**ORDER**

For the reasons stated below, plaintiffs' motion [46] for an injunction against enforcement of the Way Forward Act pending appeal is denied.

**STATEMENT-OPINION**

Plaintiffs, the Illinois counties of McHenry and Kankakee, move [46], pursuant to Fed. R. Civ. P. 62(d), to enjoin enforcement of 5 ILCS 805/15(g)(1) & (2) ("Way Forward Act") pending resolution of their appeal [43] from the judgment [42] dismissing this case with prejudice.

A state statute can be enjoined pending appeal "if the usual criteria for a stay pending appeal are satisfied." *Cavel International, Inc. v. Madigan*, 500 F.3d 544, 546 (7th Cir. 2007). The "usual criteria" for a stay pending appeal are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "As with a motion for a preliminary injunction, a 'sliding scale' approach applies; the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *In Re A & F Enterprises, Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014).

Likelihood of Success on the Merits

Plaintiffs argue that the court improperly relied on *Murphy v. NCAA*, __ U.S. __, 138 S. Ct. 1461 (2018) in finding that the Way Forward Act was not preempted. In *Murphy*, the Supreme Court stated that preemption works like this: "Congress enacts a law that imposes restrictions or confers rights on *private actors*; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Murphy*, 138 S. Ct. at 1480 (emphasis added) (citation omitted). "[R]egardless of the language sometimes used by Congress and this Court, every form of preemption is based on a federal law that regulates the conduct of private actors, not the States." *Id*. at 1481. Plaintiffs argue that this statement by the Supreme Court is incorrect and cite *Lawrence County v. Lead-Deadwood School District, No. 40-1*, 469 U.S. 256 (1985), a case involving no private actors, as an example of the error. They contend the court should have treated *Lawrence County* as controlling and disregarded *Murphy's* private actor prerequisite to preemption. Plaintiffs argue that this conflict between *Lawrence County* and *Murphy* shows that whether the Way Forward Act is preempted does not have a clear-cut answer and, therefore, given the difficult legal question decided by the court, the status quo should be maintained pending appeal.

In its dismissal order [41] the court reviewed and rejected plaintiffs' argument that *Murphy*'s private actor prerequisite to preemption was dicta. *Murphy* clearly stated that "regardless of the language

sometimes used by Congress and this Court, every form of preemption is based on a federal law that regulates the conduct of private actors, not the States." *Murphy*, 138 S. Ct. at 1481. The Court then stated "[o]nce this is understood, it is clear that [the subject federal statute] is not a preemption provision because there is no way in which this provision can be understood as a regulation of private actors." *Id*.

Plaintiffs do not argue that the federal law that authorized the federal government to enter the cooperative agreements it entered with them imposes restrictions or confers rights on private actors. *Murphy* clearly requires a federal law to do so in order for preemption to apply. *Id.*; *Accord*, *Ocean County Board of Commissioners v. Attorney General of the State of New Jersey*, 8 F. 4th 176, 182 (3rd Cir. 2021) ("A federal statute that does not regulate private actors cannot serve as a basis for preemption."). Whether *Lawrence County* involved private actors or not, it is clear that at least since the *Murphy* decision, private actors are required for preemption. Given *Murphy*, plaintiffs' likelihood of success is slim.[1] They have failed to make a "strong" showing they are likely to succeed on the merits. *Hilton*, 481 U.S. at 776.

"If an appeal has no merit at all, an injunction pending the appeal should of course be denied." *Cavel* 500 F.3d at 547. If the appeal has "some though not necessarily great merit," *id.*, the court must engage in the analysis set forth in *Hilton*. Slim is not none so the court will assess the other factors.

<u>Irreparable Harm</u>

The plaintiffs' claimed irreparable harm is mainly the loss of revenue they will suffer based on the termination of the agreements. They offer the affidavits of the McHenry and Kankakee County Sheriffs to support this claim. *Dkt* # 10-1. The McHenry County Sheriff states McHenry County receives a per diem of $95.00 for each federal detainee, including ICE detainees and that for the fiscal years 2016-2020 McHenry County housed on average 240 ICE detainees per day. The revenue generated by the agreement is used to fund many aspects of county government. The Kankakee County Sheriff states Kankakee County receives $90.00 per diem for each federal detainee it houses, including ICE detainees and that for the fiscal years 2017-2020 Kankakee County housed on average 122 ICE detainees per day. The revenue generated by the agreement is used to fund many aspects of county government.

In *Cavel*, the court enjoined the State of Illinois, pending appeal, from enforcing its recently enacted amendment to its Horse Meat Act.[2] The amendment, 225 ILCS 635/1.5, outlawed the slaughter of horses if the horse meat was to be used for human consumption. The court stated: "Cavel has made a compelling case that it needs the injunction pending appeal to avert serious irreparable harm—the uncompensated death of its business." *Cavel,* 500 F.3d at 546. Less than one percent of Cavel's output was sold for consumption other than human consumption. *Id.*

While the plaintiffs certainly will suffer a disruption in cash flow from the termination of the contracts, their existence is not threatened as was Cavel's. As they acknowledge in the Sheriffs' affidavits, they have the authority to raise taxes and make budgetary cuts to adjust to the loss of revenue. While they certainly would prefer to avoid these options, these options are available. Further, the possibility of contract termination and the attendant loss of revenue was never more than 30 days away. The agreements each allowed either party voluntarily to terminate on 30-days notice. Plaintiffs were well aware that the federal government at any time could terminate the agreements on 30-days notice ending

---

[1] In addition, in the dismissal order the court concluded that even if a preemption analysis were conducted the Way Forward Act is not preempted. The court found that Congress did not make clear and manifest that it intended the federal law authorizing the federal government to enter the cooperative agreements to prohibit the State of Illinois from controlling its political subdivisions' authority to enter such intergovernmental agreements.

[2] *Cavel* is the only case cited by plaintiff in which a court enjoined the enforcement of a state statute pending appeal.

this revenue source. As prudent public entities, they would have planned for the contingency of abrupt termination of the agreements.

Substantial Injury to the State

Whether issuing the injunction would cause substantial injury to the other party is another factor to be considered. *Hilton*, 481 U.S. at 776. Defendant argues that a state suffers irreparable injury when it is unable to enforce its duly enacted statutes. The defendant argued in its opposition to plaintiff's earlier motion for preliminary injunction that the State enacted the Way Forward Act to expand protections for immigrant and refugee communities. Dkt #25, p.16. It does so in significant part by requiring local officials to end partnerships with ICE. *Id.* Defendant stated the Way Forward Act is part of the State's effort to increase the trust immigrant and refuge communities place in the State. *Id.* Defendant argued enjoining the enforcement of the Illinois Way Forward Act would delay and frustrate that purpose and erode trust between the State and many of its residents. *Id.* Plaintiffs acknowledge that the State has an interest in having its laws enforced, but argues, citing *Cavel*, that the harm to plaintiffs from not granting the injunction pending appeal greatly exceeds the harm granting the injunction would cause the State—a brief delay in enforcing its statute. *Cavel,* 500 F.3d at 546.

The Public Interest

Neither side directly addresses the public interest factor in its filings on the motion for an injunction pending appeal, though their arguments above on respective harm also advance their view of the public interest. Plaintiffs raise the harm to the residents of their counties from higher taxes and reduced services and defendant raises the harm delay in enforcement would cause to its efforts to improve trust with a segment of its residents—immigrants and refugees. Previously, in their memoranda in support of their motion for a preliminary injunction, plaintiffs raised the hardship immigrants currently detained in their facilities would suffer from being transferred to other detention facilities in other states away from their families and legal teams.

Applying the Factors

Applying the factors articulated in *Hilton* the court finds plaintiffs likelihood of success on the merits of its appeal is small. As discussed above, *Murphy* requires that a federal law imposes restrictions or confers rights on private actors as a prerequisite to preemption. The statute under which the federal government was authorized to enter the agreements with plaintiffs does not impose restrictions or confer rights on private actors and plaintiffs do not argue that it does. Therefore, it does not preempt the Illinois Way Forward Act. While plaintiffs will likely be harmed by being required to exercise the termination clauses in their agreements if the Way Forward Act is not enjoined pending appeal, the harm is not of the magnitude found in *Cavel*, the only case cited where the court enjoined a state statute pending appeal. In *Cavel*, the plaintiff faced "the uncompensated death of its business." *Cavel,* 500 F.3d at 546. Plaintiffs' face a loss of revenue but, unlike the plaintiff in *Cavel*, they do not face the loss of over 99% of their overall revenue in the absence of an injunction against enforcement of the Way Forward Act. Applying the sliding scale, *A & F Enterprises*, 742 F.3d at 766, in order to warrant an injunction of the Way Forward Act pending appeal, plaintiffs' small likelihood of success on the merits would require a much greater degree of possible harm to plaintiffs than they assert they will suffer.

The injury defendant argues the State will suffer if an injunction is entered is essentially a public interest argument. The State, through the Way Forward Act, has acted in a way it believes will improve the trust of its residents who are immigrants and refugees in the State. An injunction would frustrate and delay improving this trust. For plaintiffs, the public interest would be served by entering the injunction because it would defer the need for a reduction in services and possible tax increases pending appeal and save the detainees currently housed in plaintiffs' facilities from being transferred to detention facilities in other states, distant from their families and legal counsel. Thus, the public interest involves is a balance

3

between those currently housed as detainees in plaintiffs' facilities, who may suffer from being transferred and immigrants and refugees living in the State of Illinois who may suffer because the State's efforts to engender trust for the State in those immigrants and refugees has been thwarted keeping them from seeking services from the State. This balance does not fall decisively in either direction.

Conclusion

  The public interest does not fall decisively in favor of an injunction. Plaintiffs have not made a strong showing that they are likely to succeed on appeal. Applying the sliding scale, plaintiffs' possible harm from the Way Forward Act not being enjoined, is insufficient when balanced against their small likelihood of success. They acknowledge they have the authority to raise taxes and adopt budgetary cuts to deal with the potential loss of revenue. Based on the terms of the agreements, termination on 30 days notice by the federal government was always a possibility of which plaintiffs were aware and for which, as prudent public entities, they would have planned.

  For the foregoing reasons, plaintiffs' motion [46] for an injunction against enforcement of the Way Forward Act pending appeal is denied.

Date: 12/27/2021            ENTER:

                  *Philip G. Reinhard*
                  United States District Court Judge

                  Electronic Notices. (LC)